6 Cal.4th 386 (1993)
862 P.2d 765
24 Cal. Rptr.2d 765
In re MATTHEW C., a Person Coming Under the Juvenile Court Law.
STANISLAUS COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
DEBORAH C., Defendant and Appellant.
Docket No. S025565.
Supreme Court of California.
December 6, 1993.
*388 COUNSEL
Carole Greeley for Defendant and Appellant.
Bradley A. Bristow as Amicus Curiae on behalf of Defendant and Appellant.
Michael H. Krausnick, County Counsel, and Linda S. Macy, Deputy County Counsel, for Plaintiff and Respondent.
Lloyd M. Harmon, Jr., County Counsel (San Diego), Susan Strom, Chief Deputy County Counsel, and James H. Wellman, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.
Steven B. Solomon, under appointment by the Supreme Court, for Minor.
OPINION
ARABIAN, J.
In this case, Deborah C. appeals certain juvenile court orders, including an order terminating her parental rights to her son, Matthew C. Prior to the Welfare and Institutions Code section 366.26 hearing at which Deborah's parental rights were terminated, the juvenile court issued an order terminating reunification services for Deborah, and setting the section 366.26 hearing. The issue we confront is whether findings subsumed within this earlier order are reviewable on appeal from the final order terminating Deborah's parental rights. We conclude that such findings are reviewable on appeal, and thus reverse the judgment of the Court of Appeal.

*389 FACTS
Matthew C. was born on March 14, 1989, addicted to heroin. He was taken into protective custody on March 16 suffering from neonatal narcotic withdrawal. On March 20, a dependency petition was filed, alleging that he came within Welfare and Institutions Code[1] section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (no provision for support), as a result of his mother Deborah C.'s habitual use of illegal substances. At the March 28 pretrial hearing, Deborah pled no contest to the allegations of the petition. Matthew was found to be a person described in section 300, subdivisions (a), (b), and (g), and continued to be detained in protective custody.
On April 11, a dispositional hearing was held. Matthew was declared a dependent child, and officially removed from Deborah's custody. The court found that reasonable efforts to prevent Matthew's removal from his home and to effect reunification had failed, that there was clear and convincing evidence of a substantial danger to Matthew's health, and that his placement was necessary. The court approved a reunification plan, which required Deborah to visit Matthew at least once a month, provide a suitable and stable home for him, make significant progress in counseling through a substance abuse program, submit to drug testing, successfully complete parent counseling, and cooperate with the assigned social worker by allowing announced and unannounced home visits, signing any necessary releases of information, contacting the social worker at least once a month, and keeping the social worker informed of her whereabouts and other relevant information regarding her circumstances. No reunification plan for any alleged father was presented because his whereabouts and present circumstances were unknown.[2]
At the six-month review hearing held in September 1989, and at the February 9, 1990, review hearing, the juvenile court ordered that reunification services be continued.
On April 17, 1990, the 12-month review hearing was held. The juvenile court commissioner found that reasonable reunification services had been provided to Deborah, that there was no substantial likelihood that Matthew could be returned to Deborah's physical custody in the next six months, and that Matthew's return to Deborah would create a substantial risk of detriment to Matthew's physical and emotional well-being. The court ordered that reunification services be terminated, and set a section 366.26 hearing.
*390 Deborah did not seek writ review of this order. She did apply for and was granted rehearing by a juvenile court judge under section 252.
At the rehearing on June 14, 1990, the juvenile court judge found that reasonable reunification services had been offered Deborah but that she had failed to participate in the programs. Reunification services were ordered terminated, and a hearing pursuant to section 366.26 was set.
On November 5, 1990, the section 366.26 hearing was held. The juvenile court commissioner found that there was "an exceedingly high likelihood" that Matthew would be adopted, and terminated Deborah's parental rights.
Deborah filed a notice of appeal from the "Sections 366.21 [12-month review] and the 366.26 ... hearing that was held on November 5, 1990, terminating parental rights of the mother...." Deborah contended in part that there was insufficient evidence to support the finding that Matthew could not be returned to Deborah within six months and that the trial court abused its discretion in denying a one-day continuance at the twelve-month review hearing. Relying on section 366.26, subdivision (k),[3] the Court of Appeal held that an order terminating reunification services and setting a section 366.26 hearing was not appealable, but was reviewable only by extraordinary writ filed before the section 366.26 hearing was held. The court affirmed the judgment, and denied Deborah's petition for rehearing. We granted Deborah's petition for review.[4]

DISCUSSION

A. General Procedure in Dependency Proceedings

We recently delineated in detail the procedure in dependency proceedings in Cynthia D. v. Superior Court, supra, 5 Cal.4th 242 (Cynthia D.). A brief *391 overview, however, is helpful to an understanding of the issues presented here.
Under the current[5] statutory scheme, dependency proceedings which involve removal of the child from his home essentially include four phases: jurisdiction, disposition, reunification, and implementation of a permanent plan, the last of which may include termination of parental rights. At the jurisdiction phase, a hearing is held to determine "whether the allegations in the petition that the [child] comes within section 300, and thus within the juvenile court's jurisdiction, are true." (Cynthia D., supra, 5 Cal.4th at p. 248.)
Once jurisdiction is found, the juvenile court then conducts a disposition hearing. (Cynthia D., supra, 5 Cal.4th at p. 248; § 358.) At this hearing, the court "considers whether the child may remain with the parents" or must be removed. (Cynthia D., supra, 5 Cal.4th at p. 248; § 361.) "If the child is removed from the parents' custody, the court must make orders regarding reunification services ... [and] notify the parents that their parental rights may be terminated if they do not reunify within 12 months." (Cynthia D., supra, 5 Cal.4th at pp. 248-249; § 361.5.) This begins what is generally denoted the reunification phase.
"Thereafter the juvenile court must review the case at least once every six months." (Cynthia D., supra, 5 Cal.4th at p. 249; § 366.) "At these review hearings there is a statutory presumption that the child will be returned to parental custody unless the court finds by a preponderance of the evidence that `the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor.'" (Cynthia D., supra, 5 Cal.4th at p. 249, fn. omitted.) "The court must also determine whether reasonable reunification services have been offered." (Ibid.)
"At the 12-month review, if the court does not return the child and finds that there is no substantial probability of return to the parent within 18 months of the original removal order, the court must terminate reunification *392 efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan." (Cynthia D., supra, 5 Cal.4th at p. 249; § 366.21, subds. (g) & (h).) This begins the final phase, implementation of a permanent plan, which may include termination of parental rights.
As we observed in Cynthia D., supra, one of the task force's goals was to reduce the delay inherent in dependency proceedings under the prior section 366.25 statutory scheme.[6] Senate Bill No. 243, enacted in 1987 (see ante, fn. 5), accomplished this goal in part by providing that the entire dependency proceeding be held in juvenile court, thus no longer requiring a second and largely duplicative proceeding in superior court. In addition, Senate Bill No. 243 minimized the "`duplication between the regular review hearings and the termination hearing [by providing that] the decisions made at the review hearing regarding reunification are not subject to relitigation at the termination hearing.'" (Cynthia D., supra, 5 Cal.4th at p. 250, quoting Task Force Report, supra, at p. 12.) Rather, "`the critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights [at the section 366.26 hearing] will be relatively automatic if the minor is going to be adopted.'" (5 Cal.4th at p. 250, quoting Task Force Report, supra, at p. 11.)
(1) "Thus, in order to terminate parental rights [at the section 366.26 hearing], the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated." (Cynthia D., supra, 5 Cal.4th at pp. 249-250.) Hence, the proceeding terminating reunification services and setting a section 366.26 hearing is generally a party's last opportunity to litigate the issue of parental fitness as it relates to any subsequent termination of parental rights, or to seek the child's return to parental custody. (See In re Marilyn H. (1993) 5 Cal.4th 295, 310 [19 Cal. Rptr.2d 544, 851 P.2d 826] [juvenile court's dispositional options at § 366.26 hearing do not include return of child to the parent].)

B. Language of Subdivision (k)

In Cynthia D., supra, 5 Cal.4th 242, we also confirmed that "parents have the right to challenge both the jurisdictional and dispositional findings and *393 orders on appeal." (Id. at p. 249; cf. In re Troy Z. (1992) 3 Cal.4th 1170, 1178-1179 [13 Cal. Rptr.2d 724, 840 P.2d 266] [noting parents first filed appeal from disposition order and then filed second appeal from judgment terminating parental rights].) In addition, section 366.26, subdivision (h), expressly provides that an order terminating parental rights may be reviewed on appeal. (See § 366.26, subd. (h) ["Any order of the court permanently terminating parental rights under this section shall be conclusive and binding ..., but nothing in this section shall be construed to limit the right to appeal the order."].)
(2a) Thus, the findings subsumed within the orders made in at least three of the four phases of dependency proceedings are reviewable on appeal. The issue here is whether the order made at the end of the reunification phase, terminating reunification services and setting a section 366.26 hearing, is also reviewable on appeal from an order terminating parental rights, or whether section 366.26, subdivision (k), creates an exception to the general reviewability on appeal of orders in dependency proceedings.
We conclude that such an exception is not supported by the language of section 366.26, subdivision (k), as construed under general principles of appealability. As noted earlier, subdivision (k) provides: "An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ." The phrase, "not an appealable order,"[7] has long been applied to interlocutory orders that are not immediately appealable, but are subject to review on appeal from a subsequent final judgment. (3) "Generally speaking, under the one final judgment rule, interlocutory or interim orders are not appealable, but are only `reviewable on appeal' from the final judgment." (Rao v. Campo (1991) 233 Cal. App.3d 1557, 1565 [285 Cal. Rptr.2d 691]; see Southern Pacific Co. v. Oppenheimer (1960) 54 Cal.2d 784, 785-786 [8 Cal. Rptr. 657, 356 P.2d 441].) "`The theory behind the rule is that piecemeal disposition and multiple appeals in a single action are oppressive and costly, and review of intermediate rulings should await the final disposition of the case.'" (Rao v. Campo, supra, 233 Cal. App.3d at p. 1565.) If an order is appealable, however, and no timely appeal is taken therefrom, the issues determined by the order are res judicata. (See, e.g., Reeves v. Hutson (1956) 144 Cal. App.2d 445, 451 [301 P.2d 264].)
(2b) In numerous cases, this court and the Courts of Appeal have used the phrase "not an appealable order" to characterize an order as being merely *394 interim or interlocutory. (See, e.g., I.J. Weinrot & Son, Inc. v. Jackson (1985) 40 Cal.3d 327, 331 [220 Cal. Rptr. 103, 708 P.2d 682] ["An order sustaining a demurrer without leave to amend is not an appealable order; only a judgment entered on such an order can be appealed."]; People ex rel. Dept. of Public Works v. Donovan (1962) 57 Cal.2d 346, 351 [19 Cal. Rptr. 473, 369 P.2d 1] [orders striking affidavits and denying motion for new trial "are not, as such, appealable orders" but "the propriety of such orders is reviewable on an appeal from the judgment"]; Southern Pacific Co. v. Oppenheimer, supra, 54 Cal.2d at pp. 785-786 [order sustaining objections to interrogatories and granting protective order is "not appealable, but is reviewable on an appeal from the judgment finally entered in the action"]; Sosinsky v. Grant (1992) 6 Cal. App.4th 1548, 1554 [8 Cal. Rptr.2d 552] ["denial of a motion for summary judgment is not an appealable order"]; Munoz v. Florentine Gardens (1991) 235 Cal. App.3d 1730, 1731 [1 Cal. Rptr.2d 609] [order dismissing case for failure to prosecute or as sanction for failing to appear at status conference is "not a final judgment and is not an appealable order"].) Thus, to construe such language as forever precluding review on appeal from a final judgment would be a dramatic and wholly unwarranted departure from long-standing precedent.
(4) Moreover, we have repeatedly held that if the Legislature intends to abrogate the statutory right to appeal, that intent must be clearly stated. "The right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment...." (People v. Bank of San Luis Obispo (1907) 152 Cal. 261, 264 [92 P. 481]; see, e.g., People v. Valenti (1957) 49 Cal.2d 199, 207 [316 P.2d 633]; Bailey v. Fosca Oil Co., Ltd. (1962) 211 Cal. App.2d 307, 309 [27 Cal. Rptr. 454] ["when the propriety of an appeal is not free from dubiety, the better practice is to deny the motion to dismiss and permit the appeal to be determined on the merits"]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 2, p. 34 ["As a matter of statutory construction, where the right to appeal is in doubt, that doubt should be resolved in favor of the right."].)
Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc. (1987) 43 Cal.3d 696 [238 Cal. Rptr. 780, 739 P.2d 140] (Tex-Cal) is particularly instructive. There, we interpreted Labor Code section 1160.8, which, on its face, provided for only two types of judicial proceedings: (1) Court of Appeal review by discretionary writ; and (2) superior court enforcement of final board orders. In addition, Labor Code section 1160.9 provided that "[t]he procedures set forth in this chapter shall be the exclusive method of redressing unfair labor practices." The board urged that section 1160.9 expressly denied an appeal by making the procedures set forth in section *395 1160.8 the exclusive method of redressing unfair labor practices, and suggested that this exclusivity provision reflected "the Legislature's wish for quick and final judicial enforcement once the administrative order is no longer subject to review on the merits." (43 Cal.3d at p. 704.)
We rejected these arguments, finding "no clear intent in section 1160.9 to contravene the general principles of appealability." (Tex-Cal, supra, 43 Cal.3d at p. 704.) In concluding that superior court enforcement orders may be appealed, even though the issues on such an appeal are limited, we observed, "It has long been established that the statutory right of appeal of final judgments and orders extends even to `special proceedings [including] those intended to be summary in nature' unless the Legislature has expressly prohibited an appeal in the particular case. ... [¶] We sympathize with the Board's desire for prompt enforcement of its final order once the order is beyond review on the merits.... Nonetheless, we can find no principled way to characterize a section 1160.8 enforcement judgment which would take it outside normal rules of appealability." (Id. at pp. 699, 705, italics added.)
(2c) Here, the Legislature did not state that an order terminating reunification services and setting a section 366.26 hearing "is not reviewable on appeal" or that such an order "shall only be reviewed by writ." (Cf. People v. Hull (1991) 1 Cal.4th 266, 275 [2 Cal. Rptr.2d 526, 820 P.2d 1036] [interpreting Code Civ. Proc. § 170.3, subd. (d), which provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate ..." to conclude that review by "writ of mandate shall be the exclusive means of challenging a denial of a [peremptory] motion to disqualify a judge"].) Rather, it merely employed the phrase "not an appealable order," language far less demonstrative of an intent to abrogate review on appeal than that found not to abrogate such review in Tex-Cal, supra, 43 Cal.3d 696.
Indeed, given the magnitude of the challenged order in the overall dependency scheme, it seems particularly appropriate to require the Legislature to be clear about any intent to abrogate the statutory right to appeal. As noted earlier, the proceeding terminating reunification services and setting a section 366.26 hearing is generally a party's final opportunity to litigate the issue of parental fitness as it relates to any subsequent termination of parental rights, or to seek the child's return to the parent's custody.
*396 Moreover, as a general matter, the Legislature has provided for appellate review of judgments and postjudgment orders[8]and any intermediate order or decision which involves the merits or necessarily affects that judgment or postjudgment order, or which substantially affects the rights of a party. Code of Civil Procedure section 906, which delineates the general rule regarding matters reviewable on appeal, provides, "Upon an appeal pursuant to Section 904.1[[9]] ..., the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party. ..." (Italics added.)[10] Section 395 provides that "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment...."[11] Clearly, an order terminating reunification services and setting a selection and implementation hearing, while interim and not itself appealable, involves the merits of or necessarily affects the subsequent order terminating parental rights, and substantially affects the rights of the parties. It is at this juncture, and not at the subsequent section 366.26 hearing, that the critical decision regarding parental rights is made. (See Cynthia D., supra, 5 Cal.4th at p. 250.)
In sum, given the courts' historical use of the term "not an appealable order" to characterize an order as interlocutory, and the critical importance *397 of the challenged rulings to the overall dependency scheme, we find nothing in the text of section 366.26, subdivision (k) specifically, or the rules of appellate procedure generally, to support the Court of Appeal's conclusion that subdivision (k) constitutes a legislative attempt to render these issues noncognizable on a party's appeal from a final judgment.

C. Legislative History of Subdivision (k)

The historical context in which section 366.26, subdivision (k), was enacted further demonstrates the Legislature's adherence to, not departure from, these well established rules of appealability. As noted earlier, section 366.25, enacted in 1982, governs permanency hearings for children adjudged dependent before January 1, 1989, and section 366.26, enacted in 1987 as part of Senate Bill No. 243, governs permanency planning hearings for children adjudged dependent after January 1, 1989. Nowhere in Senate Bill No. 243 did the Legislature address what issues were reviewable on appeal from a dependency proceeding.
Prior to the enactment of Senate Bill No. 243, however, a dispute arose in the Courts of Appeal as to whether, for children adjudicated dependent prior to January 1, 1989, a postjudgment order authorizing either the filing in superior court of a petition to terminate parental rights pursuant to Civil Code section 232, or the initiation of guardianship proceedings, was an appealable order. (Cf. In re Linda P. (1987) 195 Cal. App.3d 99, 105 [240 Cal. Rptr. 474]; In re Sarah F. (1987) 191 Cal. App.3d 398, 400, 404 [236 Cal. Rptr. 480]; In re Lorenzo T., supra, 190 Cal. App.3d at pp. 891-893; In re Joshua S. (1986) 186 Cal. App.3d 147, 154-155 [230 Cal. Rptr. 437], concluding that such orders are appealable, with In re Debra M. (1987) 189 Cal. App.3d 1032, 1039 [234 Cal. Rptr. 739]; In re Lisa M. (1986) 177 Cal. App.3d 915, 919 [225 Cal. Rptr. 7]; In re Candy S. (1985) 176 Cal. App.3d 329, 331 [222 Cal. Rptr. 43], concluding that such orders are nonappealable.) Such an order is substantially similar to the challenged order in the present case terminating reunification services and setting a section 366.26 hearing.
Those courts concluding that such orders were not appealable reasoned that the order merely authorized the county to institute a proceeding in superior court under Civil Code section 232. They noted that the county might choose not to institute the proceeding, and even if it did, that proceeding might be determined in the parent's favor. (See In re Candy S., supra, 176 Cal. App.3d at p. 331.) Thus, the courts reasoned, the parent was not "an aggrieved party" suffering from immediate injury until the action in superior court was both instituted and concluded with a termination of parental rights. *398 (See In re Candy S., supra, 176 Cal. App.3d at p. 331; cf. In re T.M. (1988) 206 Cal. App.3d 314, 315-316 [253 Cal. Rptr. 535].)
It is significant that in those cases concluding the order was not appealable, the courts assumed that review of reunification issues would be available on appeal from any subsequent order terminating parental rights. As one court stated, "the reference of a dependent child for adoptive planning is not only interlocutory in nature but differs from ordinary custody determinations because it is directed toward a hopefully permanent, fixed change in status for the dependent child in question. [¶] In our view, the reasoning [that section 366.25 orders are interim and not appealable] has considerable merit, in that it emphasizes the necessity for finality in a judgment or order before that judgment or order comes before an appellate court for review." (In re Debra M., supra, 189 Cal. App.3d at p. 1037.) The court further observed, "A parent may, of course, appeal from the adverse outcome of a section 232 hearing, a hearing resulting in a final judgment. Such an appeal no doubt would involve the same issues which would arise along the procedural path; at that point, the adequacy of the evidence and the trial court's determinations would be more suitably reviewed by this court." (Id. at p. 1039; cf. In re Lisa M., supra, 177 Cal. App.3d at p. 919 [mother's "remedy is not by way of appeal of such interim order but rather by seeking to disaffirm the critical parental termination order and its foundational dependency determinations"].)
It was in this context that in 1988, section 366.25 was amended by Senate Bill No. 1860 to add subdivision (j). As enacted, subdivision (j) provided: "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to [Civil Code] Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ."
The legislative history of subdivision (j) indicates that it was intended to resolve the conflict in the Courts of Appeal regarding which orders were final and appealable and which were interlocutory and nonappealable. The Legislature repeatedly referred to the amendment merely as "cleanup legislation" to Senate Bill No. 243.
"[T]he original bill which added subdivision (j) to section 366.25 ... was amended on April 4, 1988, to make all `Orders determining a permanent plan' nonappealable. (Sen. Amend. to Sen. Bill No. 1860 (1987-1988 Reg. Sess.) Apr. 4, 1988.)" (In re Eli F., supra, 212 Cal. App.3d at p. 235.) However, this language was amended ultimately to its enacted form after "a legislative committee staff analysis noted: `The phrase "orders determining a *399 permanent plan" is not clear as to which orders at the permanency planning hearing are not appealable. [¶] In an order at a permanency planning hearing, the court may order long-term foster care for the minor child, order or deny visitation to the parents or guardian, or impose a guardianship and issue letters of guardianship. These are final orders from which an appeal is appropriate. Should not the court orders which are not to be appealable be limited to those orders which require the filing of a petition to terminate parental rights or to establish a guardianship?' (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1860 (1987-1988 Reg. Sess.) as amended June 16, 1988.)" (Ibid., italics added.)
Hence, it appears that by its enactment of section 366.25, subdivision (j), the Legislature intended to preclude interim appeals from orders not yet final because they required the institution of further dependency proceedings at the trial court level. There is no evidence that the Legislature intended to disturb the assumption in cases concluding there was no right to an interim appeal, that issues related to a section 366.25 hearing were reviewable on appeal from the later order terminating parental rights.[12]
In 1989, two years after the passage of Senate Bill No. 243, section 366.26, subdivision (k), was enacted. As with section 366.25, subdivision (j), nowhere in the legislative history of Senate Bill No. 551, the bill adding subdivision (k) to section 366.26, is there any mention of an intent to abrogate review on appeal of the findings subsumed within an order terminating reunification services and setting a selection and implementation hearing. Rather, the legislative analysis stated that Senate Bill No. 551 "[s]pecifies that parents cannot appeal a juvenile court order to hold a hearing to consider terminating parental rights.... [T]he bill requires that orders to hold hearings to terminate parental rights are subject to appellate review by extraordinary writ. Under current law, parents can appeal juvenile court orders to hold termination hearings to the court of appeals." (Legis. Analyst's analysis of Sen. Bill No. 551 (1989-1990 Reg. Sess.) May 31, 1989, at p. 3.) Thus, by adding subdivision (k) to section 366.26, the Legislature merely provided that, as with orders authorizing a Civil Code section 232 hearing under section 366.25, orders terminating reunification services and setting a section 366.26 selection and implementation hearing were interlocutory and not immediately appealable.
In sum, nothing in the legislative history evidences an intent to preclude on appeal from a final judgment review of issues subsumed within the decision to set the section 366.26 hearing.

*400 D. Legislature's Balance of Competing Public Policies

It is clear from the preceding discussion that one of the objectives of the Legislature in enacting Senate Bill No. 243 and subsequently section 366.26, subdivision (k), was to expedite a child's permanent placement by eliminating duplication in the hearings at the trial court level, and eliminating interim appeals from the final review hearing rulings. However, it does not ineluctably follow, as the Court of Appeal and the dissent here would conclude, that by so streamlining dependency proceedings at the trial court level, the Legislature intended to abrogate all appellate review of those issues implicit in terminating reunification services and setting a section 366.26 hearing.
Indeed, the Legislature balanced numerous competing fundamental interests, including the child's compelling interest in "a placement that is stable, permanent, and which allows the caretaker to make a full emotional commitment to the child," the parents' compelling "interest in the companionship, care, custody and management" of their child (In re Marilyn H., supra, 5 Cal.4th at p. 306), and the "preservation of the family whenever possible" in its overhaul of the dependency statutes. (§ 300, subd. (j).) As we have often recognized, the Legislature is in the best position to weigh such diverse and competing concerns and devise an appropriate statutory scheme.
The Court of Appeal, and impliedly the dissent here, express concern that if "termination of reunification services is reviewable on appeal from the section 366.26 order, the ultimate consequence would likely be reinstituting reunification up to several years after termination of parental contact." Although delay in a child's permanent placement is a legitimate policy concern, it alone in the absence of any other evidence does not warrant a finding of legislative intent to eliminate appellate review of these orders. Moreover, we cannot assume that if we uphold appellate review of these issues, parents will obtain reversals absent prejudicial error on appeal, a circumstance that would mitigate any disadvantage inherent in the delay, or that those parents with meritorious claims will not take advantage of the opportunity to seek early writ review.[13]
Finally, as demonstrated above, the Court of Appeal's and the dissent's interpretation accomplishes little in terms of actually expediting a child's *401 permanent placement because many crucial and dispositive issues in dependency proceedings remain reviewable on appeal. Reversal on any of these issues necessarily results in the same delay that reversal on the challenged order would obtain.

CONCLUSION
While we share the desire to expedite resolution of a child's placement, we are bound to operate within the confines of well-established rules of statutory interpretation and appellate review. Applying these rules, we cannot discern within section 366.26, subdivision (k), any express or implied legislative intent to abrogate appellate review of the issues subsumed within an order terminating reunification services and setting a selection and implementation hearing. We conclude that while subdivision (k) abrogates "interim appeals" from orders terminating reunification services and setting a section 366.26 hearing, findings subsumed within such orders remain reviewable on appeal from the final order made at the section 366.26 hearing.[14]
The judgment of the Court of Appeal is reversed, and that court on remand should address appellant's claims on the merits.
Lucas, C.J., Mosk, J., Kennard, J., and Baxter, J., concurred.
PANELLI, J.
I dissent from the majority's conclusion that an order terminating reunification services is subject to review on appeal from a subsequent final judgment terminating parental rights.
The only effect of the majority's opinion will be to delay the permanent placement of dependent children whose absent parents have failed to seek review by writ in a timely fashion. This case illustrates the point. Matthew was taken into protective custody two days after birth. When the superior court entered its order terminating reunification services he was a little over a year old. When the Court of Appeal filed its opinion he was almost three. Soon he will be five. How often must courts in these cases be reminded that *402 "every right afforded the parents, every reunification service ordered, every continuance, and especially every appeal taken is purchased at the expense of the person who is in law and morality the primary object of judicial solicitude, namely the child"? (In re Micah S. (1988) 198 Cal. App.3d 557, 565 [243 Cal. Rptr. 756] (conc. opn. of Brauer, J.).)
The majority acknowledges, as it must, that delay is undesirable. But having done so the majority then throws up its hands in despair, apparently unable to interpret the relevant law in a way that will simultaneously protect both the child's interest in prompt permanent placement and the parents' right to appellate review.
The majority should take a harder look at the law. The starting point, of course, is to read the pertinent statute and to ask what it means. The Legislature has told us that "[a]n order by the court directing that a [permanency planning] hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ." (Welf. & Inst. Code, § 366.26, subd. (k) [hereafter section 366.26(k); all further citations to statutes are to the Welfare and Institutions Code unless otherwise noted].)
Unfortunately, the words "not an appealable order" (§ 366.26(k)) are ambiguous. They could mean either that the order in question is not appealable at all, or that it is not appealable on an interlocutory basis. The majority chooses the latter interpretation, largely on the ground that various judges in cases that had nothing to do with section 366.26(k) chose similar words to describe other orders that were not subject to interlocutory appeal. This reasoning reflects a naive view of language and lawmaking. The Legislature's acquiescence in the courts' interpretation of a particular statute may validate that interpretation, but there is no rule to the effect that the Legislature must  or does  use words in the same way the courts use them. "The Legislature is a pragmatic political body; its primary concern is not to study and refine the language used in judicial decisions, but to accomplish practical results." (Harris v. Capital Growth Investors (1991) 52 Cal.3d 1142, 1157 [278 Cal. Rptr. 614, 805 P.2d 873].)
The majority's reasoning is also difficult to reconcile with our recent conclusion in People v. Hull (1991) 1 Cal.4th 266 [2 Cal. Rptr.2d 526, 820 P.2d 1036] that the Legislature used the words "not an appealable order" in another statute (Code Civ. Proc., § 170.3, subd. (d)) to say that orders deciding statutory motions to disqualify judges are not subject to appeal at all. The majority distinguishes the disqualification statute from section 366.26(k) by pointing out that, under the former, the order in question is *403 reviewable "only by a writ of mandate." (Code Civ. Proc., § 170.3, subd. (d), italics added.) But if the word "only" is the critical difference between the two statutes, what becomes of the majority's premise that the words "not an appealable order" cannot refer to orders that are not appealable at all?
Rather than continuing this exercise in abstract philology we would do better to acknowledge the ambiguity and to ask what the Legislature was trying to accomplish and how it understood the law it was changing.
First, we know that the Legislature wanted to eliminate unnecessary delay in dependency proceedings. The very purpose of section 366.26, as we recently observed, was to ensure that "`minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis.'" (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 247 [19 Cal. Rptr.2d 698, 851 P.2d 1307], quoting Sen. Select Com. on Children & Youth, S.B. 1195 Task Force Rep. on Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (Jan. 1988) p. 10.)
It was with this purpose in mind that the Legislature enacted section 366.26. (Stats. 1987, ch. 1485, § 47, pp. 5638-5642.) There is no reason to believe that this purpose had become any less important only two years later when the Legislature added subdivision (k) to the statute. (Stats. 1989, ch. 913, § 17, p. 3169.) Indeed, the manifest purpose of subdivision (k) is to accelerate the review of orders terminating reunification services by declaring that such orders are subject to review by extraordinary writ. (§ 366.26(k).)
Second, the Legislature could reasonably have assumed that no well-advised parent would fail to seek extraordinary relief. To delay seeking review after reunification services have ended harms the parent as well as the child because the child is, in the meantime, forming bonds with its new caretakers. (Note that the parent in this case attributes her failure to seek extraordinary relief not to a conscious strategy but to ignorance of the available remedies and to ineffective assistance of counsel.)
Third, the Legislature knew that, when the alternative writ issues, the ensuing proceedings in the reviewing court are res judicata and, thus, preclude subsequent relitigation on appeal. (Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 182 [203 Cal. Rptr. 626, 681 P.2d 893].) Of course this is still true. (Kowis v. Howard (1992) 3 Cal.4th 888, 894 [12 Cal. Rptr.2d 728, 838 P.2d 250].)
Fourth, the Legislature knew that the Court of Appeal "must" (Code Civ. Proc., § 1086) issue either the alternative or the peremptory writ (id., *404 § 1087), and thus review the challenged order on its merits, "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (id., § 1086). When the alternative writ issues, as already mentioned, the ensuing decision bars relitigation on appeal from the subsequent final judgment. When the peremptory writ issues, the petitioner obtains relief and further review on appeal is unnecessary.
Finally, the Legislature could reasonably have assumed that the courts would see the harm entailed in delaying the resolution of these matters (see In re Micah S., supra, 198 Cal. App.3d at pp. 564-568 (conc. opn. of Brauer, J.)), recognize that belated appellate review was not a "plain, speedy, and adequate remedy" (§ 1086) under the circumstances, put two and two together, and issue either the alternative or the peremptory writ.
In short, when the system works the way it clearly was intended to work there is no problem. The system breaks down only when the aggrieved parties fail to petition for extraordinary relief or when the Court of Appeal summarily denies such petitions without issuing either the alternative or the peremptory writ.
The majority apparently feels that the only solution to these problems is to declare that the order terminating reunification services is subject to review on appeal from the final judgment and, at least in some cases, to restart reunification efforts years after they have ended. This approach totally disregards the overriding policy goal of expediting permanent placement. This approach also renders section 366.26(k) largely meaningless because a person aggrieved by an order terminating reunification services clearly was entitled to petition for extraordinary relief even before the Legislature enacted that section. (Code Civ. Proc., §§ 1085, 1086.)
The better solution to the problem, in my view, lies in recognizing that section 366.26(k) is not meaningless and not intended simply to tell courts what they already knew: that persons aggrieved by orders terminating reunification services had the right to file petitions for extraordinary relief. The flaw in the system was not that petitions were not being filed. The flaw was that various divisions of the Court of Appeal were summarily denying relief on the dubious ground that the writ did not lie because the appeal from the final judgment was a plain, speedy, and adequate remedy.
The evident purpose of section 366.26(k) was to tell such courts that they were wrong and that the writ did lie. And what better, plainer way existed to convey that message that than to say that orders terminating reunification services "may be the subject of review by extraordinary writ"? (§ 366.26(k), italics added.)
*405 Thus, to make sense of the Legislature's declaration that orders terminating reunification services are not appealable but are subject to review by writ, we need only declare as a matter of law what thoughtful judges have been pleading with us to recognize for years: that appeal from the final judgment is not a "plain, speedy, and adequate remedy" (§ 1086) when a child pays the price of delay. To require the Court of Appeal to review such orders on their merits by issuing either the alternative or the peremptory writ when the petition properly alleges a claim to extraordinary relief will not cause an unnecessary burden because the same court will otherwise have to decide the same issues on appeal from the final judgment. One division of the Court of Appeal (see In re Kristin W. (1990) 222 Cal. App.3d 234, 247 [271 Cal. Rptr. 629]) has already come to this conclusion, the Judicial Council has endorsed it (Cal. Rules of Court, rule 39.2A(b)), and each of the parties before the court indicated at oral argument its preference for immediate, effective writ review over belated appellate review. The reason is obvious: The former protects both the child's right to prompt permanent placement and the aggrieved parents' right to effective review.
The few remaining objections one might raise to this approach are trivially easy to overcome. If the objection is that litigants are not aware of their statutory right to seek extraordinary relief, we can make them aware by requiring trial courts to give notice at the time an order terminating reunification services is issued. A rule of court to that effect would further the manifest purpose of section 366.26(k). If the objection is that this approach would be unfair to litigants who relied on lower-court decisions holding such orders appealable, we can eliminate the unfairness by making our decision prospective. (See generally, Estate of Propst (1990) 50 Cal.3d 448, 462-464 [268 Cal. Rptr. 114, 788 P.2d 628].)
In short, the majority's holding, which will cause serious harm, is completely unnecessary. Because there is a better way to interpret section 366.26(k), I dissent.
GEORGE, J.
I respectfully dissent.
In my view, the Court of Appeal correctly concluded that, under Welfare and Institutions Code section 366.26, subdivision (k),[1] an order of the juvenile court that terminates reunification services and directs that a section 366.26 selection and implementation hearing be held is not reviewable on appeal from a subsequent order terminating parental rights. The Court of Appeal's conclusion in this regard is consistent with the rulings in a number *406 of prior Court of Appeal decisions (see, e.g., In re Amanda B. (1992) 3 Cal. App.4th 935 [4 Cal. Rptr.2d 922]; In re Taya C. (1991) 2 Cal. App.4th 1 [2 Cal. Rptr.2d 810]; In re Rebecca H. (1991) 227 Cal. App.3d 825 [278 Cal. Rptr. 185]) and, in my view, properly effectuates the legislative intent in enacting section 366.26(k). I fear that the majority's contrary interpretation of the statute will thwart the overall legislative objective  evident in the numerous recent statutory reforms in the dependency area  of minimizing the delay inherent in the process of implementing a permanent plan for the placement of dependent children.
In interpreting section 366.26(k), the majority properly begins with the language of the statute. Section 366.26(k) provides in full: "An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ."
On its face, this statutory language is ambiguous. On the one hand, the statute could be read as meaning simply that an order directing that a section 366.26 hearing be held is not immediately appealable, but not as precluding review of the order in the course of an appeal of a subsequent order (for example, an appeal of an order terminating parental rights). On the other hand, the statute alternatively could be interpreted to mean that an order directing that a section 366.26 hearing be held is never subject to review by appeal, and may be reviewed only by extraordinary writ. In other situations, similar language has been interpreted to bear either one of these two meanings, depending upon the context and the apparent intent of the Legislature. (Compare, e.g., Southern Pacific Co. v. Oppenheimer (1960) 54 Cal.2d 784, 785-786 [8 Cal. Rptr. 657, 356 P.2d 441] [order sustaining objections to interrogatories and granting protective order is "not appealable, but is reviewable on an appeal from the judgment finally entered in the action"] with People v. Hull (1991) 1 Cal.4th 266, 275 [2 Cal. Rptr.2d 526, 820 P.2d 1036] [interpreting Code Civ. Proc., § 170.3, subd. (d) ("The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate ....") to mean that writ review shall be the exclusive means of review].)
The majority concludes that, as used in section 366.26(k), this language should be interpreted as meaning simply that an order directing that a section 366.26 hearing be held is not immediately appealable, but not as precluding a party from challenging the order (or the findings subsumed within the order) during a later appeal from a subsequent order. In my view, however, when the statutory language of section 366.26(k) is considered against the background, and in light of the purposes, of the Legislature's overall reform of the dependency procedures, the more reasonable interpretation is that the *407 section was intended to establish that an order directing that a section 366.26 hearing be held is subject to review only by extraordinary writ, and may not be challenged in the course of a later appeal of a subsequent order.
The Court of Appeal decision in In re Amanda B., supra, 3 Cal. App.4th 935, contains a cogent explanation of the basis for this conclusion. As that court observed: "One of the objectives of the new statutory plan was to speed up the process by which minors would be placed in a permanent home, so that `minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis.' [Citation.] In accord with this objective, the selection and implementation hearing, at which the permanent plan for the minor is selected, must be held within 120 days from the date upon which it is determined ... that the minor cannot be returned to the parents. In harmony with this goal is the preclusion of appeal from the decisions made at a referral hearing. Review of these decisions can be sought only by petition for extraordinary writ. (§ 366.26, subd. (k).) ... [¶] The compelling conclusion from this review of statutory framework and objectives is that objections to the rulings made at a referral hearing must be raised by writ before the time of the selection and implementation hearing. If not so raised, they become moot. It would be entirely contrary to the ends sought by the statute to permit a challenge to the referral hearing determinations after selection and implementation rulings had been made. Since the selection and implementation ruling, at least if it terminates parental custody, is grounded on acceptance of the referral hearing determinations, the reliability of the selection and implementation decision would be completely destroyed if parents were able to mount late challenges to the earlier foundation rulings." (Id. at p. 940, original italics.)
As the Amanda B. analysis indicates, section 366.26(k) must properly be viewed as part of the delicate balance that the Legislature has sought to attain in creating "a scheme sensitive to both the goal of reunification where feasible and the recognition of the importance of providing `stable, permanent homes' (§ 366.26) for minor children whose parents are unable to care for them." (In re Rebecca H., supra, 227 Cal. App.3d 825, 836.) Although, in establishing review by extraordinary writ as the exclusive means by which a parent may challenge a finding as to the sufficiency of reunification services or a ruling terminating such services, section 366.26(k) may operate to deny a parent some of the extra procedural advantages that are available only on a full appeal, the Legislature evidently determined that, in this context, the need for prompt review of such rulings involving reunification services, prior to the date of the selection and implementation hearing, was of the essence. It is apparent the Legislature determined that any attempt to correct *408 an alleged error in the trial court's rulings relating to such reunification services on appeal of a subsequent order  perhaps a year or more later  was likely to do more harm than good for the child whose welfare lies at the heart of the entire dependency procedure. (See In re Taya C., supra, 2 Cal. App.4th at pp. 7-9.)
Accordingly, for the reasons set forth above, I conclude that, in an appeal from an order entered at a section 366.26 hearing (including an order terminating parental rights), section 366.26(k) precludes a party from challenging any issue concerning reunification services that was subsumed in an earlier order directing that the section 366.26 hearing be held.
I would affirm the judgment of the Court of Appeal.
NOTES
[1] All statutory references contained herein are to the Welfare and Institutions Code unless otherwise indicated.
[2] Deborah named two or three men as the father, and the record does not indicate that the issue of paternity was ever resolved.
[3] Section 366.26, subdivision (k), provides: "An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ."
[4] In addition to her challenge to the Court of Appeal's conclusion regarding the reviewability on appeal of issues subsumed within an order terminating reunification services and setting a selection and implementation hearing, Deborah's petition for review also asserted that section 366.26 was unconstitutional because it allowed parental rights to be terminated without requiring the state to prove by clear and convincing evidence that the parent is unfit and that immediate termination of parental rights is the least detrimental alternative. The Court of Appeal refused to address this argument because it was first raised in Deborah's reply brief. We have since rejected a similar argument in Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 256 [19 Cal. Rptr.2d 698, 851 P.2d 1307].

Deborah also raised certain other issues in her opening brief that were not contained in her petition for review. We do not address these issues. (See Cal. Rules of Court, rule 29.3(c).)
[5] As discussed more fully in Cynthia D., supra, 5 Cal.4th at pages 246-247, prior to the 1989 passage of section 366.26, subdivision (k), the Legislature substantially revised the child dependency statutory scheme through its 1987 enactment of Senate Bill No. 243. Senate Bill No. 243 was the result of a task force that had been appointed by the Senate Select Committee on Children and Youth to study existing statutes and practices and recommend changes to ensure maximum continuity of protection for children at risk of abuse, neglect, and exploitation. (Sen. Select Com. on Children & Youth, SB 1195 Task Force Rep. on Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services [hereafter Task Force Report] (Jan. 1988) p.i.) The task force "sought to balance protections afforded to the family with the needs of the child and the ability of the family to protect the child from harm." (Id. at p. ii.)
[6] Under Senate Bill No. 243, section 366.25, enacted in 1982, governs permanency hearings for children adjudged dependent before January 1, 1989, and section 366.26, enacted in 1987 as part of Senate Bill No. 243, governs permanency hearings for children adjudged dependent after January 1, 1989.
[7] An "appealable order" is defined as "[a] decree or order which is sufficiently final to be entitled to appellate review, as contrasted with an interlocutory order which generally is not appealable until the case has been tried and judgment entered...." (Black's Law Dict. (6th ed. 1990) at pp. 96-97.)
[8] We note that some Court of Appeal cases have held that an order determining that a minor is a dependent child within the meaning of section 300 is itself a judgment. (See In re Rubin P. (1991) 2 Cal. App.4th 306, 313, fn. 6 [3 Cal. Rptr.2d 301]; In re Elizabeth M. (1991) 232 Cal. App.3d 553, 563 [283 Cal. Rptr. 483] ["An order adjudicating a minor a dependent child under section 300 is appealable as a final judgment, and any subsequent order may be appealed from as from an order after judgment."]; In re Megan B. (1991) 235 Cal. App.3d 942, 950 [1 Cal. Rptr. 2d 177] ["In a dependency proceeding, the dispositional order constitutes a judgment."]; In re Eli F. (1989) 212 Cal. App.3d 228, 233 [260 Cal. Rptr. 453]; § 360.) Accordingly, the order authorizing the initiation of a proceeding pursuant to Civil Code section 232 under the prior statutory scheme has been analyzed as a postjudgment order. (See In re Lorenzo T. (1987) 190 Cal. App.3d 888, 892 [235 Cal. Rptr. 680] ["order for commencement of termination proceedings (§ 366.25 order) is an order after judgment of dependency."].) The final order terminating parental rights under the current statutory scheme has also been characterized as a final judgment, and, hence, an order terminating reunification services and setting a selection and implementation hearing may also be analyzed as a prejudgment order. Because either characterization renders the same result in this case, i.e., that the challenged order is reviewable on appeal, we need not determine the order's precise characterization.
[9] Code of Civil Procedure section 904.1 provides that "An appeal may be taken from a superior court in the following cases: [¶] (a) From a judgment, ... [¶] (b) From an order made after a judgment made appealable by subdivision (a)."
[10] Penal Code section 1259 sets out a similar rule governing appeals in criminal cases.
[11] Section 395 further provides that an appeal in a dependency proceeding "shall have precedence over all other cases in the court to which the appeal is taken."
[12] Subsequent to the passage of subdivision (j), this court dismissed as improvidently granted then-pending cases concerning the appealability of such reference orders. (See In re Eli F., supra, 212 Cal. App.3d at p. 234.)
[13] As we construe the current statutory scheme, seeking writ review of the order terminating reunification services and setting a section 366.26 hearing is permissible but not a condition for raising these issues on appeal. If the Legislature deems it appropriate, however, it could amend the statute to expressly provide that a party must seek writ review as a condition to later raising the issue on appeal from a final judgment, and to require that parties be explicitly advised of this requirement at the final review hearing.
[14] Because we conclude that the Legislature has not precluded an appellant from raising issues regarding the termination of reunification services and setting of a selection and implementation hearing on appeal from an order terminating parental rights, there is no need to reach the issue of whether such a ban would be constitutional. Nor need we address Deborah's additional claims that it would be a denial of due process to refuse to review the order when she was not advised of her right to petition for writ review and when the law was unclear regarding the subsequent appealability of the order.

We hereby deny Deborah's September 22, 1992, "Application to Take Judicial Notice," and her October 1, 1993, "Application to Treat Appeal as a Writ and Application to Take Judicial Notice."
[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code. For convenience, section 366.26, subdivision (k), will be referred to as section 366.26(k).