Filed 10/23/23  In re Christan R. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Christan R. et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.T., <br><br> Defendant and Appellant. | B317943 <br><br> Los Angeles County Superior Court No. 21CCJP01020 |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

———————————

A mother claims insufficient evidence supports the decision removing her two sons from her custody. She asks us to reverse this order and to vacate the resulting custody orders. We affirm. Statutory citations are to the Welfare and Institutions Code.

The family has a lengthy history with the Los Angeles County Department of Children and Family Services. The current case began in March 2021, when the boys were eight and nine. The case changed character after the juvenile court declared the children dependents in June 2021. The Department filed its subsequent petition in November 2021, and the children were detained from the mother and released to the father then. We focus on this latter part of the case.

We review dispositional orders for substantial evidence. We indulge reasonable inferences and resolve conflicts in favor of the findings, examine the record in the light favorable to the juvenile court's determinations, and refrain from credibility determinations. (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re V.L.* (2020) 54 Cal.App.5th 147, 154 (*V.L.*).) Because these orders require clear and convincing evidence at the juvenile court, we ask whether the record contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. (*V.L.*, *supra*, 54 Cal.App.5th at pp. 149, 154–155.)

Substantial evidence justified removal of these children under section 361, subdivision (c)(1). A reasonable trier of fact could have found it highly probable the children faced a

2

substantial danger to their emotional wellbeing if they returned to their mother's home and no reasonable means short of removal could protect them. (See § 361, subd. (c)(1); *V.L.*, *supra*, 54 Cal.App.5th at pp. 156–157.) The mother offers no argument about reasonable alternatives to removal, so we focus on the danger the children faced in their mother's care.

The mother has diagnoses of bipolar disorder, depression, anxiety, and paranoia. She acknowledged she was not taking her psychotropic medication consistently, she had thrown away her medication at one point because she felt she did not need it, and she believed her conditions were "naturally controlled." The boys often observed their mother making funny faces and talking to herself. A recent psychiatric assessment of the mother noted symptoms of anxiety, depression, and mania.

The mother experienced delusions, including a persistent belief neighbors and others—including the boys' toddler half-sister—were trying to harm her children. She resorted to bringing the boys into the bathroom while she showered to ensure they were safe. She woke them up in the middle of the night and took them outside when she thought someone was knocking on the window and was trying to take them. The facilitators of the mother's mental health program were "very worried" about her and her " 'deep fixed delusion' " about intruders.

The mother frequently contacted the Department, law enforcement, and the child abuse hotline and made false reports of abuse. The police department informed the mother she may get "red flagged" due to all the false calls. The children then had to answer for their mother's behavior. The mother told them to lie and forced them to go along with her stories. They felt

3

compelled to lie to various authorities because they were afraid their mother would get upset or hit them.

The mother grew erratic, "very paranoid," and aggressive toward neighbors, social workers, and the boys' father. She could not control herself or follow instructions at hearings in the case.

The record shows the mother's condition greatly affected the children.

Her behavior scared them and made them uncomfortable. The mother would grow angry or hit them when they disagreed with her version of events. She reportedly used to hit them often, sometimes for no reason. Others in the family's transitional home reported the mother yelled and hit the children on a daily basis. Once she threw a cell phone at her older son and hit him in the forehead.

The children would shut down when asked about the mother's behavior. The older child was diagnosed with "reaction to severe stress unspecified." The younger child said he could not take his mother's abuse anymore. He wished that he could hit her back sometimes or that he could have called his father to get him. The boys cried almost daily at their mother's home.

The mother's behavior affected the boys' relationship with other family members. She would not let them call their father when they were with her. Yet she would call or message persistently when they were with the father or at school. The boys felt they had to hide their relationship with their half-sister to avoid upsetting their mother.

The boys' therapist noticed they were happier, more open, and not as scared after moving in with their father. The children did not wish to be with their mother at all by the time of the January 2022 disposition hearing.

On appeal, the mother concedes her conduct was "offensive" and "highly inappropriate" at times, but she maintains this conduct was directed toward others, not the children. The evidence we have recounted above shows the mother's behavior was emotionally damaging to the children, regardless of where it was aimed.

The mother denied some of the events and denied any emotional abuse. She also notes various mental health professionals were not concerned about the children, and she highlights other evidence favorable to her. This evidence and these denials have no bearing in our substantial evidence review. (See *V.L.*, *supra*, 54 Cal.App.5th at pp. 154, 156, 157 [appellate courts view the evidence favorably to the respondent and disregard conflicting evidence].)

The mother's denials also signal she lacked insight into her mental condition and a willingness or ability to change her behavior. Shortly before the disposition hearing, the Department noted the mother "has yet to take any responsibility for her behavior and has failed to address her mental health issues." "In light of mother's failure to recognize the risks to which she was exposing the minor[s], there was no reason to believe the conditions would not persist should [they] remain in her home." (*In re A.F.* (2016) 3 Cal.App.5th 283, 293.)

The mother criticizes the juvenile court's reliance on *In re Matthew C.* (1993) 6 Cal.4th 386. But the court relied on that case in connection with its jurisdictional findings, which the mother does not challenge on appeal.

The mother leans heavily on *In re H.E.* (2008) 169 Cal.App.4th 710, a case that found removal warranted. That case

5

had different facts and does not render the disposition here inappropriate.

## DISPOSITION

We affirm the juvenile court's dispositional orders.


WILEY, J.


We concur:


GRIMES, Acting P. J.


VIRAMONTES, J.

6