[No. B076977. Second Dist., Div. Seven. June 13, 1994.]

In re DANIEL G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
WILLETA W., Defendant and Appellant.

## COUNSEL

Jane Winer for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Mitchell Beckloff and Jeanette Malouf for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Willeta W. appeals from a judgment permanently severing her parental rights as to Daniel and ordering Daniel be placed for adoption. We conclude the juvenile court erred in holding it had no discretion to order continued reunification services beyond the 18-month review under Welfare and Institutions Code section 366.22, subdivision (a) and that such error was prejudicial. Therefore, the judgment is reversed and the matter remanded to the juvenile court for further proceedings consistent with the views expressed below.

### FACTS AND PROCEEDINGS BELOW

Daniel was born on April 6, 1991. At that time his mother, Ms. W., was living in a board-and-care home under a conservatorship of her person and estate. The record shows Ms. W. is mildly mentally retarded and has been

diagnosed as suffering from schizophrenia and poor impulse control. The Los Angeles County Department of Children's Services (DCS) filed a petition to make Daniel a dependent of the court four days after his birth. The petition alleged that due to her mental condition Ms. W. was incapable of providing for Daniel's needs. It further alleged Daniel was at risk of suffering serious physical harm as a result of his mother's inability to provide for her own care much less those of an infant.

In June of 1991 Daniel was declared a dependent child of the juvenile court and placed in foster care. The court ordered DCS to provide family reunification services to Daniel and his mother.

Ms. W.'s conservatorship was terminated in August 1991 but she continued to live in monitored surroundings at a board-and-care home.

The court conducted a six-month review of the case under Welfare and Institutions Code section 366.21, subdivision (e)[1] on January 13, 1992. At that hearing the court continued Daniel's foster placement and ordered DCS to continue to provide family reunification services. The court made a finding reasonable reunification services had been provided up to that point.

The next review did not occur until nine months later, in September 1992. Again, the court continued its placement order for Daniel. This time, however, the court specifically ordered Ms. W. have weekly visitations with Daniel and found DCS had not made reasonable efforts to reunite Daniel and his mother since the previous hearing in January 1992.

A final 18-month review under section 366.22 took place on December 30, 1992. The failure of DCS to provide family reunification services was a major issue at this hearing.

The court received in evidence a written report by Charles Brown, Daniel's social worker at DCS. In this report, Brown stated the family reunification services since the last review consisted of monitoring Daniel's placement through home visits and telephone calls to the foster parent; monitoring Ms. W.'s progress in board and care; and providing referrals as needed to the foster mother. The foster mother, the report stated, "is gracious enough to facilitate visits between minor and mother by bringing minor to see mother . . . when scheduling allows." Ms. W. had satisfactorily cooperated with the visitation plan.

At the hearing Brown testified he had been the social worker on the case throughout 1992. He did not know if Ms. W. was in an independent living

---

[1]All statutory references are to the Welfare and Institutions Code.

skills program and had never attempted to find out or to place her in one. He did not know if there were board and care facilities which would accept a mother and child and had not attempted to find out. He had spoken with Ms. W.'s psychiatrist but could not remember whether he asked the psychiatrist if Ms. W. would ever be able to care for Daniel and, if so, when. Brown admitted that during the entire time he had been on the case he had never once spoken to Ms. W. However, at this point Brown changed his earlier testimony and stated he had only been on the case since May or June of 1992. No other testimony was offered at the hearing.

Following Brown's testimony and arguments by counsel for DCS, Daniel and Ms. W., the court made a finding DCS had not provided reasonable reunification services to Daniel and his mother from the time of the six-month review to the end of the eighteen-month review period. The court noted the social worker "didn't even talk to her once" and "Department has relied on old reports, hearsay, and has done nothing . . . ."

Despite its view that DCS's reunification efforts on behalf of Daniel and his mother had been "a disgrace," the court stated it felt constrained to order a hearing on a permanent plan for Daniel because "[t]his is the 18-month hearing date" and because DCS had made reasonable reunification efforts in the first six months after Daniel's placement. Thus, the court terminated further reunification efforts and set the matter for hearing on the selection and implementation of a permanent plan for Daniel.

At the hearing on the permanent plan, the court made the requisite findings under section 366.26, subdivisions (b) and (c) and ordered termination of Ms. W.'s parental rights with respect to Daniel. Ms. W. filed a timely appeal from this judgment.

For the reasons set forth below, we hold the juvenile court erred in concluding that despite the fact the reunification services provided this family were a "disgrace" it had no discretion to continue efforts at reunification beyond the 18-month review period. Therefore, we reverse the judgment and remand the matter to the juvenile court for a proper exercise of its discretion as to continued reunification services.

## DISCUSSION

To orient the issue in this appeal it is necessary to understand the four stages in a dependency proceeding leading up to the termination of parental rights. Those four stages are: jurisdiction, disposition, reunification and implementation of a permanent plan, which may include termination of

parental rights. (*In re Matthew C.* (1993) 6 Cal.4th 386, 391 [24 Cal.Rptr.2d 765, 862 P.2d 765].)

Promptly after a child is removed from a parent, a jurisdiction hearing is held to determine if there were adequate grounds for removal. If so, a disposition hearing is held to determine whether the child should be returned to the parents or must be removed pending further review. If the child is removed from the parent's custody, the court, in most cases, must make orders regarding reunification services. (§ 361.5, subd. (a).) This begins the reunification stage. During the reunification stage, the court must review the case at least once every six months to determine whether the child may be returned to the parents and whether reasonable reunification services have been afforded the family. (§§ 366.21, subds. (e), (f), (g)(1); 366.22, subd. (a).) Normally, if the child cannot safely be returned to the parents after 18 months from the detention (3 review periods), the court must terminate reunification efforts and set the matter for hearing to determine a permanent placement plan for the child. This leads to the final stage, implementation of a permanent plan which may include termination of parental rights and adoption of the child. (§ 366.26.)

The appeal in this case focuses on the reunification stage of the proceeding. Ms. W. does not challenge the sufficiency of the evidence to support termination of parental rights under section 366.26. Rather, her contention is the case only got to that stage because the juvenile court erred in terminating reunification services at the 18-month review. ▓ An order terminating reunification services and setting a hearing under section 366.26 is reviewable on appeal from the final judgment terminating parental rights. (*In re Matthew C., supra,* 6 Cal.4th at p. 388.)

▓ The purpose of California's child welfare law is threefold. First, "to provide maximum protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to protect children who are at risk of that harm." (§ 300, text foll. subd. (j).) Second, to "focus on the preservation of the family whenever possible." (*Ibid.*) And, third, to reach a final disposition in each case as expeditiously as possible. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)

Recognizing these goals might often conflict, the Legislature adopted procedures to balance the interest of the child in being free from physical or emotional harm and in a permanent relationship with nurturing adults, the interest of the parent in raising the child without inappropriate intrusion into family life and the interest of the public in traditional family values including the preservation of parental bonds. Thus, the legislative scheme allows

the ultimate termination of parental rights only after multiple findings of parental unfitness, ongoing reunification efforts and clear and convincing evidence it is likely the child will be adopted. (§ 366.26, subds. (b), (c); *Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at p. 253.) As a general rule, the court has 18 months from the original order of detention to determine if the child should be returned to the parent or placed elsewhere with or without termination of parental rights. (§§ 366.22, subd. (a); 366.26, subds. (b), (c).)

To achieve the goal of preserving the family whenever possible, the Legislature required the county child welfare departments to develop and implement family reunification plans and required the courts to monitor those plans through periodic review. Family reunification efforts are required to begin with the first determination the child will be detained in juvenile court custody. (§§ 319; 361.5, subd. (a).) Thereafter the court must review the case at intervals of no less than six months and determine, among other things, whether reasonable reunification services have been offered. (§§ 366.21, subds. (e), (f), (g)(1); 366.22, subd. (a).)

Unfortunately the Legislature did not specify what the court should do if, as in the present case, the court finds reasonable reunification services were *not* offered. The only guidance is provided in section 366.26, subdivision (c)(2) which states that even if all other requisites for termination of parental rights are present, "The court shall not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." The present case does not come within this proscription because the court found in the first six-month review that reasonable reunification services had been provided. It was in the subsequent 12 months DCS failed to provide the required services.

DCS argues 18 months is the outer limit for family reunification efforts. At the end of this time, if the child cannot be returned to the parent, the court must order a permanent placement hearing under section 366.26 regardless of whether reasonable reunification services have been provided.

In support of this argument DCS points out that while the Legislature was concerned with preserving the family unit whenever possible, it was also concerned with providing an expeditious final resolution of the case. (See *Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at pp. 246-247.) Therefore the Legislature provided for "services to the minor and the minor's parents or guardians for the purpose of facilitating reunification of the family within a

maximum time period not to exceed 12 months" except that "[s]ervices may be extended up to an additional six months if it can be shown that the objectives of the service plan can be achieved within the extended time period." (§ 361.5, subd. (a).) At the 12-month review, the court must extend the time for reunification services for up to an additional 6 months if it finds "reasonable services have not been provided to the parent or guardian." (§ 366.21, subd. (g)(1).) Relying on this latter provision, DCS argues the court cannot extend the next review period beyond 18 months from the date the child was originally taken from the parent's custody. When a case is continued pursuant to section 366.21, subdivision (g)(1), the court at the 18-month hearing must either order the child returned to the parent or order a permanent placement hearing to be held within 120 days. (§ 366.22, subd. (a).) The Legislature made no provision for any further continuances to provide family reunification services. Indeed, the statute provides if a permanent placement hearing is ordered, "The court shall also order termination of reunification services to the parent." (*Ibid.*)[2]

Similar arguments were made and rejected in *In re Dino E.* (1992) 6 Cal.App.4th 1768 [8 Cal.Rptr.2d 416]. In *Dino*, no reunification plan was ever developed for the father. The juvenile court nonetheless concluded it was compelled to terminate reunification services and order a permanent placement hearing. (*Id.* at p. 1777.) The court denied the father's request to extend reunification services beyond 18 months because the court believed " '[t]he law doesn't permit it.' " (*Id.* at p. 1775.) The Court of Appeal disagreed with the juvenile court's interpretation of the statutory scheme and issued a writ of mandate ordering the court to vacate the permanent placement hearing and to exercise its discretion in determining whether an additional period of family reunification services should be required.

In determining the juvenile court had discretion to extend family reunification services beyond the 18-month review, the court noted at the time of the 18-month review in *Dino* section 366.22, subdivision (a) provided, "If the minor is not returned to a parent or guardian at the 18-month hearing and the court determines that reasonable services have been offered or provided to the parent or guardian, the court shall develop a permanent plan." The court interpreted this language to mean the trial court "must find that reasonable services have been offered to the parent before ordering that a permanent plan be developed for the minor." (6 Cal.App.4th at p. 1776.) The

---

[2]DCS contends the 18-month limit on family reunification services does not mean the child welfare agency can sit idly by for 18 months and allow the parent to lose parental rights for lack of reunification services. Section 366.26, subdivision (c)(2) prevents this result by providing parental rights cannot be terminated if the court finds "at each and every hearing" reasonable services were not offered or provided the family.

court recognized, "The statutes and rules governing dependency actions clearly require that a family reunification plan be developed as a part of any dispositional order removing a child from its home" and that ". . . no reunification plan was ever developed for appellant." (*Id.* at pp. 1776-1777.) The court rejected a "'mechanical approach'" to reunification. (*Id.* at p. 1777.) Instead, the court held, "[w]here no reunification plan is in place, . . . a strict enforcement of the time line does not provide the opportunity to reunite the family. We do not believe that such a result was intended by the Legislature. . . . We conclude that under the circumstances of this case, where the court was faced with the prospect that the 18 months had elapsed and no reunification plan had been developed for the parent, the court was entitled to weigh the various interests involved and exercise its discretion." (*Id.* at p. 1778, fn. omitted.)

We find the reasoning in *Dino* applicable to the present case.

At the time of the 18-month review in the present case, the language requiring the court to determine whether reasonable services have been offered or provided to the family had been moved from the opening sentence of section 366.22, subdivision (a) and made a separate sentence: "The court shall determine whether reasonable services have been offered or provided to the parent or guardian." (Stats. 1991, ch. 820, § 4.) According to the Legislative Counsel's Digest, the purpose of this rearrangement "would require a court to determine whether reasonable services have been offered or provided to the parent or guardian but would delete that requirement as a *precondition* for developing a permanent plan." (Legis. Counsel's Dig., Sen. Bill No. 475 (1991 Reg. Sess.) Summary Dig., p. 352, italics added.) This amendment to the statute supports our conclusion the juvenile court has discretion not to move on to the permanent plan stage of the case until it is satisfied reasonable reunification services have been provided to the family.

While it is true in the present case *some* reunification services were provided to Ms. W. and Daniel this does not alter our conclusion the court had discretion to extend reunification services. Rather, it is a factor the court should consider in exercising its discretion whether to order a permanent placement hearing. We see no meaningful distinction between a case such as *Dino*, in which no reunification plan was ever developed, and a case such as the one before us where a reunification plan was developed but not implemented during most of the reunification stage. To draw such a distinction would be to take a "mechanical approach" to reunification inconsistent with the legislative intent in requiring reunification services discussed above.

We find nothing in the legislative intent or the specific language of section 366.22 or 366.26 which prohibits the court from extending the period for

reunification services beyond 18 months from the child's detention where the agency responsible for providing these services has, in the court's opinion, failed to make a reasonable effort to provide those services.

While the Legislature was concerned with reducing delays in arriving at a permanent resolution of the child's placement, we do not believe the Legislature intended a speedy resolution of the case to override all other concerns including "the preservation of the family whenever possible" especially given the lengths to which the Legislature went to try to assure adequate reunification services were provided to the family. In upholding the parent's right to challenge on appeal an order terminating reunification services and setting a permanent placement hearing, the Supreme Court, in *Matthew C.*, stated: "Although delay in a child's permanent placement is a legitimate policy concern, it alone in the absence of any other evidence does not warrant a finding of legislative intent to eliminate appellate review of these orders." (6 Cal.4th at p. 400.)

The provision in section 366.22, subdivision (a) mandating a termination of reunification services if the child is not returned at the 18-month hearing only applies if the court at that hearing orders a permanent placement hearing. As we hold in this case, the court has discretion not to order such a hearing if it determines reasonable reunification services have not been provided. Any other interpretation of that section would render meaningless the mandate "[t]he court shall determine whether reasonable services have been offered or provided to the parent or guardian."

The provision in section 366.26, subdivision (c)(2) prohibiting termination of parental rights if "at each and every hearing" the court has found "reasonable efforts were not made or that reasonable services were not offered or provided" affords the parent some protection against the total misfeasance of the child welfare agency. This protection, however, is not a substitute for the requirement to provide family reunification services which, under the legislative scheme, "the petitioning agency must have satisfied *before* it can propose termination." (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 256, italics added.) Furthermore, even where this statute applies it does not result in the child being returned to the parent but only provides parental rights shall not be terminated. The child will still remain out of the home in placement with a guardian or in long-term foster care. (§ 366.26, subd. (b).) The "critical decision regarding parental rights" is made at the review hearing under section 366.22 where the court makes a final determination the child cannot be returned home and that a permanent placement outside the home must be ordered. (5 Cal.4th at p. 250.)

Thus, as shown above, interpreting the statutes to provide the juvenile court with discretion to order continued family reunification services at the

18-month review is consistent with the legislative intent to preserve the family unit whenever possible and with the specific statutory provisions addressing the requirements for family reunification services. As the facts in this case illustrate, without this discretion the Legislature's expectation the family will receive reasonable reunification services is reduced to a mere hope. But this is not the sole ground for our holding. As we explain below, due process requires Ms. W. be offered reasonable reunification services before her parental rights can be terminated.

In *Cynthia D.*, *supra*, a parent whose parental rights had been terminated under section 366.26 challenged the termination on the ground it was based on a finding by a mere preponderance of the evidence return of the child to parental custody would create a substantial risk of detriment to the child. The parent argued due process required such a finding be made by "clear and convincing evidence," citing *Santosky* v. *Kramer* (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388] and *In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198]. The California Supreme Court rejected the parent's argument finding the substantive and procedural requirements leading up to a termination order under section 366.26 were distinguishable from those involved in *Santosky* and *Angelia P.*: "Considered in the context of the entire process for terminating rights under the dependency statutes, the procedure specified in section 366.26 for terminating parental rights comports with the due process clause of the Fourteenth Amendment because the precise and demanding substantive and procedural requirements the petitioning agency must have satisfied before it can propose termination are carefully calculated to constrain judicial discretion, diminish the risk of erroneous findings of parental inadequacy and detriment to the child, and otherwise protect the legitimate interests of the parents." (5 Cal.4th at p. 256.)

Referring to the risk of erroneous factfinding, the court found this risk was substantially diminished under the statutory scheme "which emphasizes 'preservation of the family whenever possible' " (5 Cal.4th at p. 254) and requires "a series of hearings involving ongoing reunification efforts . . . . Only if, over this entire period of time, the state *continually* has established that a return of custody to the parent would be detrimental to the child is the [parental termination] stage even reached." (*Id.* at p. 253, italics added.)

Clearly, one of the "precise and demanding" substantive requirements DCS must meet to satisfy due process is affording reasonable reunification services. Where reasonable services are not afforded there is a substantial risk the court's finding the child cannot be returned to the parent will be erroneous. (*Cynthia D.* v. *Superior Court, supra*, 5 Cal.4th at p. 256.) To put it another way: in order to meet due process requirements at the termination

stage, the court must be satisfied reasonable services have been offered during the reunification stage.

In the present case, the reunification services DCS provided in the last 12 months of the reunification stage were virtually nil—a "disgrace" as the trial court put it. The social worker assigned to the case did not even contact the mother during this period but put all his time into working with Daniel and the foster mother who wished to adopt him. The worker did not investigate the possibility Ms. W. and Daniel could be housed together in a facility which would meet both their needs and had no idea whether Ms. W. was progressing toward an independent living situation. He never asked Ms. W.'s psychiatrist whether he believed Ms. W. would ever reach the point where she could care for Daniel and, if so, when. Despite the fact the court ordered weekly visits between Ms. W. and Daniel, the record shows visits were only arranged monthly—the social worker taking the view that even these visits were through the "grace" of the foster parent.

We recognize Ms. W. appears to have serious emotional problems and realistically she may never be able to properly care for her son. On the other hand, it appears from the record DCS gave up on this case without really trying. This it cannot do. (*In re John B.* (1984) 159 Cal.App.3d 268, 273 [205 Cal.Rptr. 321].) If DCS believed reunification services should not be provided for one of the reasons contained in section 361.5, subdivision (b), which includes a parent's mental disability, it should have brought this to the court's attention at the disposition hearing. It did not do so and the court ordered reunification services be provided. Therefore, DCS had a duty to make a good faith effort to provide those services.

As our Supreme Court has recognized, the 18-month review under section 366.22 "is generally a party's final opportunity to litigate the issue of parental fitness as it relates to any subsequent termination of parental rights, or to seek the child's return to the parent's custody." (*Matthew C., supra,* 6 Cal.4th at p. 395.) Once the case reaches the permanent placement stage, " 'the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted. . . .' " (*Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at p. 250, citation omitted.) Thus, "given the magnitude of the challenged order in the overall dependency scheme" (*In re Matthew C., supra,* 6 Cal.4th at p. 395), we conclude the juvenile court had discretion to continue reunification services beyond the 18-month review hearing and its failure to exercise that discretion requires reversal of the judgment terminating Ms. W.'s parental rights as to Daniel.

On remand the juvenile court should determine whether to exercise its discretion to order further reunification services. In making this determination, the court should consider the services already provided Ms. W. and

Daniel, the likelihood of success of any further reunification efforts, whether Daniel's need for a prompt resolution of his status outweighs any benefit from further reunification services and such other factors as the parties may bring to the court's attention.

DISPOSITION

The judgment is reversed and the matter remanded to the trial court for further proceedings consistent with the views expressed herein. Appellant is awarded costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.