Filed 3/5/14  In re Steven P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re STEVEN P., a Person Coming Under the Juvenile Court Law. | |
| RICHARD P.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF NAPA COUNTY,<br><br>    Respondent;<br><br>NAPA COUNTY HEALTH AND HUMAN SERVICES et al.<br><br>    Real Party in Interest. | A140550<br><br>(Napa County<br>Super. Ct. No. JV17163) |

Petitioner Richard P. is the non-custodial father of four-year-old Steven P., who was removed from the care of mother Melissa B. after she was arrested on charges of drug possession and child endangerment.  After 12 months of reunification services for both parents, the juvenile court terminated services to Richard, but ordered respondent Napa County Health & Human Services (the Department) to provide Melissa six additional months of reunification efforts.  Richard appealed from the order terminating his services, which appeal is currently pending in this court.  (*In re Steven P.*, A139495.) Meanwhile, despite the additional services, Melissa failed to alleviate the circumstances

1

that led to the dependency proceeding. As a result, on December 12, 2013—while Richard's appeal was pending—the juvenile court terminated Melissa's reunification services and set a Welfare and Institutions Code section 366.26[1] permanency hearing for April 3, 2014.

Richard now petitions for extraordinary writ relief, contending that the juvenile court erred by: (1) setting the section 366.26 hearing while his appeal from the order terminating his reunification services was pending; and (2) failing to make a finding of detriment at the 18-month review hearing. He also urges us to stay the permanency hearing pending the outcome of his appeal. We conclude Richard's arguments lack merit. We therefore deny both the petition and his request for a stay.

## BACKGROUND

On June 18, 2012, the Department filed a section 300 petition, alleging that Steven's parents failed to protect him within the meaning of subdivision (b). The allegations stemmed from Melissa's arrest five days earlier on charges of drug possession and child endangerment. Specifically, during a probation search, police officers found drugs in the home Melissa shared with Steven, her ex-husband, and other members of her family. Melissa was under the influence at the time, admitting to methamphetamine use the previous day. The home was littered with garbage, broken glass, and clothing, and one of the bedrooms smelled like urine. There were also toxic materials and knives lying around within easy reach of the children. Steven was taken into protective custody and placed in the home of a relative.[2]

A social worker interviewed Richard on June 26. He described his troubled relationship with Melissa, noting that they had been together for almost four years but were separated at that time. According to Richard, Melissa was clean when they first got together, but later began using again, including when she was pregnant. He told the social worker he had called the Department and the police on numerous occasions to

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] We omit further details concerning Melissa except where relevant to the issues before us.

report concerns about Steven's safety while in Melissa's care, but he was eventually told he would be arrested for harassment if he continued to call. He also acknowledged that Melissa had a restraining order against him because she claimed he had beaten her up, when in fact he was the one who had been punched in the face by the brother of Melissa's ex-husband.

At the July 12 jurisdiction hearing, Richard and Melissa submitted on the petition, and the court sustained the allegations and took jurisdiction over Steven.

In the July 25 disposition report, the Department advised the court that Richard acknowledged his need for more stability in his life before he could provide a home for Steven. According to Richard, he was staying with a friend's grandmother because none of his relatives would let him stay with them. He admitted he had "bounced from job to job" over the previous few years, which he blamed on Melissa. He believed he had a negative reputation because he was surrounded by "thieves and drug addicts."

The Department believed that it was not in Steven's best interest to be placed with Richard, explaining: "Richard P. is the non-custodial parent in this Dependency. He stated that he does not have a suitable home to which he can take Steven. In addition, the Court issued a five year restraining order against the father in April 2012 based on reported domestic violence between him and the mother. The father has questionable associations with people he describes as 'thieves and drug addicts' which pose a risk of harm to Steven. In addition, there are numerous conflicting reports that state that the father does in fact use drugs or has in the recent past. The father does not have stable employment or reliable transportation."

The Department recommended that both parents receive reunification services. Richard's proposed reunification plan required him to obtain and maintain a stable, safe, and sanitary place for Steven to live; stay free from illegal drugs; participate in counseling or therapy to address issues of substance abuse and uncontrolled anger; complete a drug and alcohol intake assessment and comply with all recommendations; attend weekly NA/AA meetings; submit to random drug testing; and participate in the substance abuse recovery management system.

3

At the July 26 disposition hearing, the court adopted the Department's recommendation and reunification plans with minor modifications.

On December 27, the Department submitted a six-month review report, recommending continued reunification efforts for both parents. At that time, Richard continued to struggle with finding a permanent place to live. He had lost a prior job when his employer went out of business, but he had recently been hired to work at a local restaurant. In terms of compliance with his reunification plan, the Department noted that Richard was complying with the visitation component, as well as certain other requirements, although he had not, as noted, obtained a stable place to live, nor had he complied with all requests to drug test.

At the January 15, 2013 six-month review hearing, the court continued services to both parents, specifically finding that Melissa had made minimal progress on her case plan, while Richard had made moderate progress.

By the time of the Department's June 13, 12-month review report, however, Richard was no longer participating in his reunification plan. According to the Department, "The father reported being terminated from his position as a cook in January 2013. Additionally, the father reported other social challenges that have interfered with his ability to be stable and remain in contact with the Department. The father reported dealing with an untreated illness of Depression which he characterized as, 'not getting enough sleep.' The father reported being financially unstable and that losing his job caused the termination of his cell phone service. The father added that his lack of transportation has prevented him from visiting his son and communicating with the Department."

As to the specific requirements of the reunification plan, Richard was no longer visiting with Steven, with his last visit having occurred on December 25, 2012, nearly six months prior. He was also out of compliance with most other requirements of his plan, having only completed a "managing emotions" class in January, as well as a drug and alcohol assessment.

4

In terms of "Detriment & prognosis of returning child home," the Department stated, "The father has only engaged with the undersigned once during this reporting period. The undersigned learned the father's phone service to be disconnected through multiple attempts of contacting the father. The undersigned made two unannounced home visits at the address provided by the father; however, during both attempts, the father's grandmother reported that the father does not reside at the address and that no relative has seen the father in months. The undersigned mailed two letters to this address requesting the father to contact the Department immediately; however, the father has yet to contact the Department. [¶] On 5/21/2013, the father came into the Department to discuss case planning with the undersigned. During the time, the father reported experiencing economical hardship which resulted in his lack of participation in case planning throughout this reporting period. The father's uncooperative behavior or lack of involvement with the Department suggests that the father is not dedicated to reunifying with Steven. The father has not made progress in his case plan and has been homeless for much of the reporting period. While the father reports he recently moved in with his girlfriend, it is unknown if this is a stable living environment. Further, the father has not visited Steven since December 2012 or made any attempt to contact or visit Steven since December 2012." Accordingly, the Department recommended terminating Richard's services.

Melissa, on the other hand, was being consistent in her visits and had completed all components of her reunification plan, other than maintaining a stable, safe, and sanitary place to live with her children, free from alcohol and illegal drugs. Consequently, the Department recommended an additional six months of services for her.

At the 12-month review hearing, the court found that Melissa had made substantial progress in alleviating the problems that led to the dependency proceeding and extended her reunification services. It also found that Richard had made no progress in remedying the circumstances that led to Steven's placement and that placing Steven in his care would create a substantial risk of detriment to the child's wellbeing. It therefore terminated reunification efforts as to Richard.

Richard filed a timely notice of appeal from the July 29 order terminating his services.

Six months later, the Department filed an 18-month review report recommending that the court terminate Melissa's reunification services and set a section 366.26 hearing, as she was no longer complying with most requirements of her case plan.

At the December 12, 18-month review hearing, the court terminated reunification services for Melissa, and set a section 366.26 permanency hearing for April 3, 2014.

Richard's petition for an extraordinary writ followed.

## DISCUSSION

### 1.   The Juvenile Court Did Not Err In Setting the Section 366.26 Hearing

In his primary argument, Richard contends that the juvenile court erred in setting a section 366.26 permanency hearing while his appeal challenging the termination of his reunification services was pending.  As he would have it, "Procedurally, the only proper path that could be taken by the trial court in this case was to defer consideration of the setting of the 366.26 hearing until this Court has an opportunity to decide the appeal. Otherwise, should this Court reverse the order terminating services, Richard will very shortly be faced with a hearing on termination of his rights without receiving the statutorily mandated services."  Richard is incorrect.

First, the juvenile court was statutorily obligated to set the selection and implementation hearing upon terminating Melissa's services.[3]  Section 366.22, subdivision (a) provides that at the 18-month review, unless the court returns the child to his or her parent or extends services, it must schedule a section 366.26 hearing within 120 days.  (See also Calif. Rules of Court, rule 5.720(b)(3)(C).)  At the December 12

---

[3] The same is not true when the court has only terminated services to one parent, such as when the court terminated Richard's reunification services.  (California Judges Benchguides 104: Juvenile Dependency Selection and Implementation Hearing (2013) § 104.6  ["A .26 hearing cannot be set to terminate the parental rights of only one parent unless that parent is the sole surviving parent, the parental rights of the other parent have been terminated, or the other parents has relinquished custody."]; Cal. Rules of Court, rules 5.705, 5.708(*l*); 5.725(a)(2), (g).)

6

review hearing, the court terminated services to Melissa (having already done so as to Richard). Accordingly, it was bound by statute to set the permanency hearing.

Richard neither acknowledges the court's statutory obligation nor identifies any exceptions to it. And the single authority he does cite in claimed support of his argument—*In re Daniel G.* (1994) 25 Cal.App.4th 1205 (*Daniel G.*)—is unavailing. There, Daniel was removed from his mother's care at birth, and the court ordered reunification services. (*Id.* at pp. 1207–1208.) At the six-month review hearing, the court found that the Department had provided reasonable services and ordered it to continue reunification efforts. At the 12-month review hearing, however, the court found that the Department had not made reasonable reunification efforts during that review period and ordered six more months of services. (*Id.* at p. 1208.) At the 18-month review hearing, the court again found that the Department had not provided reasonable services, labeling its reunification efforts "a disgrace." Despite this finding, the court ordered services terminated and set a section 366.26 permanency hearing, doing so because it felt "constrained" by the law and because the Department had made reasonable reunification efforts in the first six months. (*Id.* at pp. 1208–1209.) At the section 366.26 hearing, the court terminated parental rights, and the mother appealed. (*Id.* at p. 1209.)

The Court of Appeal reversed, holding that the juvenile court erred in concluding it lacked discretion to continue reunification efforts beyond the 18-month review period. (*Daniel G., supra,* 25 Cal.App.4th 1209.) It concluded that the provision in section 366.22, subdivision (a) mandating termination of reunification services if the child is not returned at the 18-month hearing did not apply if, as was the case there, the juvenile court found reasonable reunification services had not been provided. (*Id.* at p. 1214.) According to the Court of Appeal, the juvenile court must find that reasonable reunification efforts were made before it can schedule a section 366.26 permanency hearing. (*Ibid.*)

Richard submits that, as in *Daniel G.*, the juvenile court here was prohibited from setting the section 366.26 hearing because his pending appeal challenges the

7

reasonableness of efforts made by the Department to reunify him and Steven. But that is not what *Daniel G.* held. Rather, it held that the juvenile court could not set the section 366.26 hearing if *that court* had not found that reasonable services had been provided. Here, the juvenile court found reasonable services, and it thus properly set the section 366.26 hearing.

We close our discussion on this argument with an observation that the issue is in large part one of Richard's own making. While the order terminating his reunification services was indeed appealable (§ 395; *Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1395), Richard's wiser course of action may have been to seek writ review of the order. As explained in a practice guide on California juvenile dependency law, "Because appellate review is by nature a protracted process, the courts have often noted that appeal is not an adequate remedy in dependency cases. Even though all juvenile appeals are entitled to calendar preference, if an order affecting an issue such as custody, placement, or visitation is not stayed, review of the issue may take such a long time that the family situation has irrevocably changed or the child may have suffered irreparable harm before the reviewing court can act. It is not unusual for the juvenile court to terminate parental rights before the appellate court has reviewed orders made at the dispositional and review hearings. Therefore, several courts have encouraged the use of extraordinary writs, even in cases in which there is a right to appeal. See, *e.g., In re Michelle M.* (1992) 8 [Cal.App.4th] 326, 330. [¶] Because of the inadequacy of the appellate remedy, appellate counsel may need to seek earlier review of crucial juvenile court orders by way of a petition for extraordinary writ relief." (Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2013) § 10.3, pp. 816-817.)

As noted, Richard was within his rights to proceed via an appeal rather than a more expeditious writ petition. Nevertheless, the hearing to select a permanent plan for Steven should not be delayed because that is how Richard chose to proceed.

### 2. The Juvenile Court Found In Its June 19, 2013 Order That Placing Steven In Richard's Care Would Create a Substantial Risk of Detriment to Steven

Richard next argues that the juvenile court failed to find that it would be detrimental to return Steven to his care, as section 366.21 required it to do. In support, he cites the court's detriment finding in its order following the 18-month review hearing, a finding it based on the "Detrimental & Prognosis of Returning the child" section in the November 21, 2013 review report. In turn, Richard notes, the referenced section of the November 21 report makes no mention of him, discussing only Melissa and her mental health issues, criminal activity, and inability to remain stable and meet Steven's needs. But Richard fails to acknowledge that at the time the court terminated reunification services as to *him*, e.g., in its July 29, 2013 order, it did indeed find that returning Steven to his care would be detrimental. And Richard can only challenge that finding in his appeal from the July 29 order, not in this writ petition.

Additionally, Richard claims that the court terminated his reunification services due to his failure to visit Steven "for several weeks following the six-month review." According to Richard, however, at the time of the 12-month review he was visiting as often as the Department would allow, and he has continued to do so with the sole exception of one missed visit in August 2013. Again, this argument is not properly before us, as it goes to the propriety of the court's order terminating reunification services, an issue that is currently pending in Richard's appeal. We do feel it necessary, however, to point out that Richard's attempt to depict an exemplary visitation history is belied by the record: according to the Department, Richard had no contact with either it or Steven between December 2012 and May 2013.

### 3. Richard Has Not Made an Exceptional Showing of Good Cause Justifying an Order Staying the Section 366.26 Hearing

Lastly, Richard urges us to stay the April 3, 2014 section 366.26 permanency hearing. Per California Rules of Court, rule 8.452(f), we have the authority to do so upon "an exceptional showing of good cause." Richard has not made such a showing here.

9

Richard's appeal challenges the juvenile court's termination of his reunification services. While we in no way intend this as an evaluation of the merits of his appeal, we cannot say that Richard has made even a preliminary demonstration of the "[n]umerous errors" that he claims occurred.

Moreover, Richard is incorrect when he asserts that his "right to appellate relief [will be] meaningless if the trial court is permitted to proceed to terminate his parental rights without a full determination of the appeal." If this court concludes that the juvenile court failed to provide reasonable reunification services, as Richard urges on appeal, then the matter will be remanded for further proceedings consistent with that opinion. (*Daniel S., supra,* 25 Cal.App.4th at p. 1217 [matter remanded for further proceedings because section 366.26 hearing, which resulted in termination of parental rights, was improvidently set in light of trial court's finding that reasonable services were not provided].)

Finally, pursuant to section 366.26, subdivision (j), "[A] petition for adoption may not be granted until the appellate rights of the natural parents have been exhausted." Thus, adoption of Steven, if that is the permanent plan selected, cannot be finalized while Richard's appeal is pending.

## DISPOSITION

The petition of father Richard P. for extraordinary writ relief is denied on its merits. (Cal. Rules of Court, rule 8.452(h)(1).) This decision is final as to this court forthwith. (*Id.*, rule 8.490(b)(2)(A).)

10

_____
Richman, J.

We concur:

_____
Kline, P.J.


_____
Haerle, J.

11