Filed 3/19/14  In re Landon C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re LANDON C., a Person Coming Under the Juvenile Court Law. | B250740 |
| | (Los Angeles County Super. Ct. No. CK87243) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| RILEY G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Zeke Zeidler, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Riley G., mother of four-year-old Landon C., appeals from the order terminating her parental rights. Riley contends the juvenile court erred in concluding she had not established the parent-child beneficial relationship exception to the termination of parental rights provided by Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Section 300 Petition*

On April 1, 2011 the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Riley had a history of alcohol abuse and was currently abusing alcohol, at one point suffering an alcohol-induced loss of consciousness while Landon was in her care. The petition alleged Riley's alcohol abuse made her incapable of providing regular care for Landon (§ 300, subd. (b)). The petition also alleged Landon's father, Jimmy C., failed to provide him with the necessities of life, including food, clothing, shelter and medical treatment (§ 300, subd. (g)). The court detained Landon from his parents' custody and placed him under the temporary care and supervision of the Department.

### 2. *The Jurisdiction and Disposition Hearing*

At the July 13, 2011 jurisdiction/disposition hearing, Riley pleaded no contest to the allegation in the petition. Jimmy submitted on the Department's reports. The court sustained both allegations in the petition and proceeded to disposition. The court declared Landon a dependent child of the court, removed him from Riley's physical custody and ordered him suitably placed with Jaime and Carmen S., Landon's maternal cousins. The court ordered monitored visitation for Riley and Jimmy at least twice a week and reunification services for both parents. Riley was ordered to participate in an alcohol abuse program with weekly and on-demand alcohol testing and individual counseling.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

3. *The Six-month Review Hearing*

At the January 9, 2012 six-month review hearing (§ 366.21, subd. (e)) Riley was found to be in partial compliance with her case plan.  Her visitation was changed, over the Department's objection, to unmonitored including overnight visits; further reunification services were ordered for both parents.

4. *The Department's Section 388 Petition and the Contested 12-month Review Hearing*

On March 27, 2012 the Department filed a section 388 petition to modify the court's prior order for unmonitored visitation, alleging its social worker had found two bottles of alcohol in Riley's bedroom during an unannounced visit and Riley had missed her last three drug and alcohol tests.  The Department requested Riley's visitation return to being monitored.  The Department's section 388 petition was heard on June 19, 2012, the same day as the 12-month review hearing (§ 366.21, subd. (f)).  The court granted the Department's petition and ordered monitored visitation for Riley until she completed four consecutive clean drug and alcohol tests.

At the 12-month review hearing the court found Riley in partial compliance with her case plan and ordered continued reunification services for her.  The court terminated Jimmy's reunification services.

5. *The 18-month Review Hearing—Riley Regains Custody of Landon*

By the September 28, 2012 18-month review hearing (§ 366.22) Riley was doing well and was in full compliance with her case plan.  The court, consistent with the Department's recommendation, returned Landon to Riley's custody on the condition Riley continue to comply with her case plan.  The court ordered family maintenance and family preservation services.

6. *The Department's Section 387 Petition*

On November 16, 2012 the Department filed a section 387 petition to detain Landon from Riley's custody, alleging Riley had been arrested on October 19, 2012 for driving under the influence of alcohol.  The court detained Landon and ordered monitored visitation for Riley.

.       On January 4, 2013 the court sustained the section 387 petition and ordered twice weekly monitored visitation for Riley. The court terminated Riley's reunification services and set a section 366.26 selection and implementation hearing to consider termination of Riley's parental rights.

7. *Riley's Section 388 Petition*

On May 9, 2013 Riley filed a section 388 petition alleging she had been participating in an alcohol abuse program for two months and was sober. Riley requested Landon be returned to her custody or that reunification services be reinstated. On May 17, 2013 the court denied Riley's section 388 petition without a hearing.

8. *The Selection and Implementation Hearing*

At the contested May 29, 2013 selection and implementation hearing Riley testified she had always assumed a parental role with Landon, one promoted by her cousins, Landon's foster (and prospective adoptive) parents. She participated in his preschool enrollment, toilet-training and school projects and spoke with him every day. Landon calls Riley "mommy." Riley argued it was in Landon's best interests not to terminate her parental rights.

The Department's and Landon's counsel acknowledged Riley's regular visitation and her parental role, but emphasized that, more than two years after detention, her visitation remained monitored. They also stressed the strong bond Landon shared with his current caretakers and urged the court to terminate parental rights to provide Landon the permanence adoption would bring.

The court terminated Riley's parental rights, finding she had not established the section 366.26, section (c)(1)(B)(i) exception to termination. The court stated that, while Riley has "maintained regular and consistent visitation and contact and, actually, has part of the parental role and relationship to the child, it doesn't outweigh the benefits of permanence and adoption for this child who, for the most part, spent two of his three years being raised by the cousins and not in the care of the mother."

4

**DISCUSSION**

1. *Governing Law*

Section 366.26 governs the juvenile court's selection and implementation of a permanent placement plan for a dependent child. The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) Once the court has decided to end parent-child reunification services, the legislative preference is for adoption. (§ 366.26, subd. (b)(1); *In re Celine R*. (2003) 31 Cal.4th 45, 53 ["[I]f the child is adoptable . . . adoption is the norm. Indeed, the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child."]; see *In re Marilyn H*. (1993) 5 Cal.4th 295, 307 [once reunification efforts have been found unsuccessful, the state has a "compelling" interest in "providing stable, permanent homes for children who have been removed from parental custody" and the court then must "concentrate its efforts . . . on the child's placement and well-being, rather than on a parent's challenge to a custody order"].)

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing. First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250; *In re D.M*. (2012) 205 Cal.App.4th 283, 290.) Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *In re Matthew C*. (1993) 6 Cal.4th 386, 392 [when child adoptable and declining to apply one of the statutory exceptions would not cause detriment to the child, the decision to terminate parental rights is relatively automatic].)

One of the statutory exceptions to termination is contained in section 366.26, subdivision (c)(1)(B)(i), which permits the court to order some other permanent plan if

5

"'[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.'"  The "benefit" prong of the exception requires the parent to prove his or her relationship with the child ""'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."'"  (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643; accord, *In re Amber M.* (2002) 103 Cal.App.4th 681, 689; see *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 ["the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer"].)

A showing the child derives some benefit from the relationship is not a sufficient ground to depart from the statutory preference for adoption.  (See *In re Angel B.* (2002) 97 Cal.App.4th 454, 466 ["[a] biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent"].)  No matter how loving and frequent the contact, and notwithstanding the existence of an "'emotional bond'" with the child, "'the parents must show that they occupy "a parental role" in the child's life.'"  (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.)  Factors to consider include "'[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs.'"  (*In re Marcelo B.*, *supra,* 209 Cal.App.4th at p. 643.)  "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement."  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350; accord, *In re C.B.* (2010) 190 Cal.App.4th 102, 122; see *In re Celine R.*, *supra,* 31 Cal.4th at p. 53 ["[t]he statutory exceptions merely permit the court, in *exceptional circumstances* [citation] to choose an option other than the norm, which remains adoption"].)

6

2. *Standard of Review*

The parent has the burden of proving the statutory exception applies.
(*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The court's decision a parent has not satisfied this burden may be based on either or both of two component determinations— whether a beneficial parental relationship exists and whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B); see *In re K.P., supra*, 203 Cal.App.4th at p. 622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) When the juvenile court finds the parent has not established the existence of the requisite beneficial relationship, our review is limited to determining whether the evidence compels a finding in favor of the parent on this issue as a matter of law. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)[2] When, as here, the juvenile court concludes the benefit to the child derived from preserving parental rights is not sufficiently compelling to outweigh the benefit achieved by the permanency of adoption, we review that determination for abuse of discretion. (*In re K.P.*, at pp. 621-622; *In re Bailey J.,* at pp. 1314-1315.)

3. *Riley Failed to Establish the (c)(1)(B)(i) Exception to Termination of Parental Rights*

Riley contends she clearly demonstrated a parental bond with Landon that outweighed termination of parental rights: She regularly maintained visitation and contact with Landon and served a parental role in his life. The juvenile court found Riley

---

[2] Because the juvenile court's factual determinations are generally reviewed for substantial evidence, it has often been posited a challenge to a finding that no beneficial relationship exists is similarly reviewed for substantial evidence. (See, e.g., *In re Bailey J., supra,* 189 Cal.App.4th at p. 1314; *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351.) The parent's failure to carry his or her burden of proof on this point, however, is properly reviewed, as in all failure-of-proof cases, for whether the evidence compels a finding in favor of the appellant as a matter of law. (See *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"]; *In re I.W., supra,* 180 Cal.App.4th at pp. 1527-1528 [same].)

truthful in her testimony and acknowledged that her relationship with Landon was significant. However, the court also found Riley's failure to achieve meaningful progress beyond monitored visitation had undermined her ability to play a full parental role in Landon's life. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 51 [it is difficult to demonstrate a parent/child relationship when visits remain supervised]; *In re K.P., supra,* 203 Cal.App.4th at p. 621 [same].) In addition, Landon had been out of Riley's custody and with his prospective adoptive parents for nearly two-thirds of his young life. In that time, Landon and his prospective adoptive parents had formed a strong bond. The Department reported that Landon viewed them as his parents and they regarded him as their son. Carefully considering the evidence before it, the court found the benefit to Landon of adoption outweighed the preservation of Riley's parental rights. That finding was well within the court's discretion.

## DISPOSITION

The May 29, 2013 order terminating Riley's parental rights is affirmed.


PERLUSS, P. J.


We concur:



WOODS, J.



ZELON, J.

8