Filed 6/28/24  Swearengin v. Swearengin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GEORGINA SWEARENGIN,<br><br>     Respondent,<br><br>     v.<br><br>DAVID SWEARENGIN, JR.,<br><br>     Appellant;<br><br>DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>     Respondent. | D083423<br><br><br>(Super. Ct. No. FAMRS1103957) |

APPEAL from a judgment of the Superior Court of San Bernardino, Daniel C. Lough, Commissioner.  Affirmed.

Milligan, Beswick, Levine & Knox, Stephen P. Levine and Elizabeth Leon Gonzalez for Appellant.

No appearance by Respondent, Georgina Swearengin..

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Maureen C. Onyeagbako and Jacquelyn Y. Young, Deputy Attorneys General, for Respondent, Department of Child Support Services.

David Swearengin, Jr. filed a request for order (RFO) in which he asked the trial court to terminate his obligations to pay child and spousal support. The court denied the RFO because David had for years failed to comply with an order awarding attorney's fees to his ex-wife, Georgina Swearengin.[1] In its ruling, the court said David could refile the RFO once the attorney's fees were paid. David did not appeal this ruling. Instead he waited more than four years and then filed a motion to strike the ruling and to reinstate the RFO. The court concluded it lacked authority to grant the relief David was requesting, and it denied the motion.

Now, David appeals from the order denying the motion. He argues Code of Civil Procedure section 473, subdivision (d), vested the court with authority to set the ruling aside as void, despite the passage of time. We conclude that the motion was untimely and that section 473, subdivision (d), does not apply in any event because the ruling on the RFO was not void. Thus we affirm.

## I.
## Factual and Procedural Background

In describing events placed in issue on this appeal, it is helpful to focus the bulk of our attention on three discrete filings by David that are pivotal to an understanding of what happened in this case. We refer to these filings as: the 2013 RFO, the 2017 RFO, and the 2022 motion.

### A. *The 2013 RFO, What Preceded It, and What Became of It*

In 2011, after many years of marriage to David, Georgina filed a petition for divorce. The following year (2012), the trial court (Hon. Teresa S. Bennett) concluded a four-day hearing by granting a domestic violence

---

[1] Because the parties share the same last name, we refer to them by their first names. We do so for the sake of clarity, intending no disrespect.

restraining order (DVRO) in favor of Georgina and against David. That same year, Judge Bennett ordered David to make three types of payments to Georgina: (1) child support in the amount of $1,623 per month; (2) spousal support in the amount of $2,065 per month; and (3) attorney's fees in the amount of $10,000, paid in installments over time, in connection with the DVRO.

Two years later, in 2014, Judge Bennett issued a default dissolution judgment in which she ordered the same level of support as before, confirmed the existing $10,000 award for attorney's fees from the DVRO matter, and ordered David to pay Georgina an additional $10,000 for attorney's fees. The judgment also included findings that David owed arrears with respect to child and spousal support. Later that year, David pleaded guilty to several counts of contempt for nonpayment of child support, and Judge Bennett sentenced him to 24 months' probation "upon the following terms:"

"1. Violate no law or court order made in this case.

"2. Judgment shall be withheld on further sentencing pending further order of the Court upon probation violation or successful completion of probation.

"3. [Georgina] shall not bring revocation proceedings until [David's] Request for Order (modification filed October 17, 2013 is adjudicated."[2]

The October 17, 2013, RFO referenced in item 3 of Judge Bennett's contempt order (the 2013 RFO) is the first of the three filings by David that we have described *ante* as pivotal to an understanding of what happened in

---

[2]    In our review of the record, we have found no October 17, 2013, RFO— or *any* pre-2017 RFO—seeking modification of support. Nonetheless, we presume the existence of such an RFO based on the above-quoted order. As revealed *post*, our presumption in this regard does not affect the outcome of this appeal.

3

this case.  This RFO was never heard on the merits.  Instead, according to David, it was continued 15 times over the next three years and then, "[u]ltimately[,] on August 25, 2016, . . . taken off calendar by me . . . without resolution."[3]

During 2015, amidst all the continuances, David began suffering a series of health setbacks that interfered with his ability to earn.  According to a letter from a treating physician that David submitted to the trial court in 2017:  "Mr. Swearengin has suffered three strokes and four transient ischemic attacks . . . since March 2015.  He has also had one myocardial infarction and he suffers from pancreatitis."  As related by David himself, "the last two strokes caused me to be blind in my right eye as well as losing my vision in my left eye thus leaving me legally blind.  The strokes also caused me short term and long term memory loss."

**B.    *The 2017 RFO, and the Trial Court's Rulings Denying It***

In 2017, David filed a *new* RFO.  In the 2017 RFO, David requested that his monthly support obligations be reduced "to zero."  In support of this

---

3    David's accounts of his role in the 2013 RFO being continued so many times, and in its ultimately being taken off calendar, are contradictory.  On the one hand, he declares:  "I was never given the opportunity to present [this RFO] to the court" because, "[a]t each and every hearing[,] *opposing counsel* continued the [matter] to the point that [it] was eventually *dropped off* as if I had never filed" it (italics added).  On the other hand, he acknowledges in the same declaration that the hearing was "delayed by *both* parties" and, as noted *ante*, that this RFO was "taken off calendar *by me*" (italics added).  David's counsel's characterizations are likewise contradictory.  On the one hand, he states that "*[o]pposing counsel* successfully defended against [this RFO] from 2013-2016 by a series of continuances" (italics added).  On the other hand, he characterizes the continuances as "multiple *agreed upon* continuances," and he repeatedly acknowledges that the 2013 RFO was taken off calendar by David or his former counsel."

4

request, David declared: "the court miscalculated my income" at the time it made its original support orders, "I did not have the money they claimed I did back then," and "I do not have the ability to pay $3,000[4] a month." He also cited the health setbacks mentioned *ante* and corresponding expenses. In addition, referring back to the *2013* RFO, David declared: "The judge said my modification would be retroactive to 2013 but my [RFO] was eventually overlooked and never heard."[5]

In 2017, Georgina filed two RFOs of her own. In one of these RFOs, she declared that David "ha[d] violated his term of probation by refusing and neglecting to follow court orders [requiring him] to pay child support, spousal support, and attorney's fees" and requested that David's "probation be revoked and that he be sentenced on the contempt." In her other RFO, she asked the court to quantify the arrears in support and attorney's fees and to "stay proceedings filed by [David] until he complies with the Court's previous orders" obligating him to pay support and attorney's fees.

The trial court (Hon. Khymberli S. Apaloo) held a series of three hearings on these competing RFOs—one on August 10, 2017, at which David appeared in propria persona and Georgina was represented by counsel; and a

---

4    The provenance of the $3,000 figure is not apparent in the record, beyond a statement in David's declaration that he "ha[d] been told that [Georgina] modified the current support order to $3,000 a month commencing March 1, 2017."

5    These representations are not borne out in the record. Specifically: The record includes no order or transcript (apart from the order of Judge Bennett quoted *ante*) from which we can discern what a judge might have said about retroactivity to 2013; and, as noted above in footnote 3, the statement that David's RFO "was . . . overlooked" is contradicted by his and his counsel's multiple acknowledgments that the RFO was taken off calendar by David or his counsel.

second and third, on October 19, 2017 and January 17, 2018, respectively, at which both parties were represented by counsel.

At the August 2017 hearing, David insinuated to Judge Apaloo that the 2013 RFO had never been taken off the court's calendar, and he argued that preventing his 2017 RFO from being heard until after the attorney's fees had been paid would be an injustice:

> "In 2013, due to [a] significant decrease in income from about 10,000 a month down to a 2,000 a month, I had requested modification for support, and [the hearing on] that [request for] modification has been continued to this date. And I've never been able to go to court and modify the support. And so in 2014 there was a trial with Judge Bennett, and Judge Bennett ordered that there be no orders in this case until I had my modification hearing. And this case has just continually been trailed and trailed. . . I've never had my hearing, and so today to say, well, I haven't paid attorney's fees and things like that—well, the judge ordered no orders until I had my modification.

> "[M]y income is disability income. [C]urrently, Ms. Swearengin is getting $2,300 a month from that—from CalPERS. It's being split 50/50, and so she's been receiving $2,300 a month from my disability retirement to this date. Aside from that, I've been requesting modification, and I've never been able to have my case; it's just been continually postponed.

> "[¶ . . . ¶]

> "According to the court documents, I did file for modification back in [2013], and it's been postponed by both parties, I think 14 times by, Ms. Swearengin's attorney from that date forward. And I've never been able to have a court date, and so I couldn't modify the support. And so that's what I was requesting today to finally have my—a hearing to modify it, and then he [Georgina's counsel] filed . . . [Georgina's request for sentencing on the] contempt."

6

Judge Apaloo questioned whether the 2013 RFO was truly before the court and put the matter over to October 2017 to enable her to review the file in greater depth before proceeding further.

At the October 2017 hearing, Georgina's counsel argued that the disentitlement doctrine[6] militated in favor of staying David's 2017 RFO. Judge Apaloo said she was inclined to agree and set the matter for a further hearing in January 2018:

> "The Court: With respect to her argument about the disentitlement [doctrine], I think she's got a point there. What I'm inclined to do—and this is my tentative—is not give him a hearing until he's paid the attorney[s'] fees. ¶ I can put the spousal support and child support request kind of in suspense. ¶ [H]e needs to pay her.
>
> "[¶ . . . ¶]
>
> "[David's Counsel]: [T]he Court's position is you will not revisit the child support or spousal support modification until all of these attorney fees are paid off [?]
>
> "[¶ . . . ¶]
>
> "The Court: Correct. Paid off. ¶ And we'll see in January if it's paid off. If it is paid off, then . . . we'll be ready to finish the rest of the case."

---

6    "The disentitlement doctrine 'is a discretionary tool that may be used to dismiss an appeal when the balance of the equitable concerns makes dismissal an appropriate sanction. [Citation.] The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state.' " (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 346; see also *In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 580-581.) Although the doctrine typically is described as a tool available to *reviewing* courts, it also has at times been applied by trial courts. (See, e.g. *Cohen*, at pp. 577, 581-584.)

At the January 2018 hearing, David's counsel acknowledged that David had not paid the attorney's fees, and Judge Apaloo ruled:

> "I'm going to deny Mr. Swearengin's request to modify child support and spousal support [i.e. the 2017 RFO] at this time.  I'm going to . . . order that[,] once the prior attorney's fees order is paid, . . . he can re-file that [request], and then we can consider it at that time."

## C.  *The 2022 Motion, and the Trial Court Order Denying It*

David did not appeal the denial of his 2017 RFO.  But in 2022—four and one-half years after that ruling issued—he filed a "Motion to Strike Rulings of 2017/2018 as Void[,] Reopening Reserved Hearing Retroactive to April 15, 2017."  In this motion he targeted the October 2017 and January 2018 rulings, arguing on statutory and constitutional (due process)  grounds: (1) that the disentitlement doctrine should not have been applied; (2) that the rulings should be stricken as void pursuant to Code of Civil Procedure section 473, subdivision (d); (3) that the 2017 RFO should "be reopened and heard retroactive to its filing"; and (in keeping with the arguments he had made in the 2017 RFO); (4) that his support obligations "should be reduced to $0.00."

The trial court (Commissioner Daniel C. Lough) heard the 2022 motion and denied it:

> "[David's] Motion to Strike Rulings of 2017/2018 as void reopening reserved hearing retroactive to April 15, 2017[,] [is] DENIED[.]  ¶  There is no relevant legal authority that would allow the Court to vacate the orders made by Judge Apaloo in 2017 and 2018.  [David] relies on Code of Civil Procedure section 473(d), but . . . the intent of that statute is to correct clerical mistakes in a judgment or order.  It is not intended to completely void orders made over five years earlier.  Moreover, the issues raised by [David] could have been raised by an appeal or motion for reconsideration, but the time for doing so has long since passed for both.  Lastly, the requested relief, if granted, would constitute a retroactive modification, and support orders 'may not be

8

modified or terminated as to an amount that accrued before the date of the filing of the notice of motion.' Family Code section 3651(c)(1)."

David timely appealed the order denying the motion.

## II.
## Discussion

### A.  *Timeliness*

We begin our analysis with a focus on Commissioner Lough's conclusion that the 2022 motion was untimely.  Inasmuch as this was a conclusion of law based on undisputed facts, we review the commissioner's ruling de novo.  (See *Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 208; *Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 875.  So doing, we begin by observing:  (1) that Judge Apaloo's rulings on the 2017 RFO were postjudgment orders regarding modification of support; (2) that "postjudgment orders regarding modification of support are appealable" (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906; see also *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 597; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1216); and (3) that, "[i]f an order is appealable . . . and no timely appeal is taken therefrom, [then] the issues determined by the order are res judicata." (*In re Matthew C.* (1993) 6 Cal.4th 386, 393 (*Matthew C.*); see also *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705.)  Thus, if David disagreed with Judge Apaloo's ruling denying the 2017 RFO and wanted to challenge it, he should have filed a timely appeal. (Cf. *Taliaferro v. Taliaferro* (1960) 180 Cal.App.2nd 44, 45–48 [concluding— in case in which trial court had denied motion to set aside as void an eight-year-old order requiring appellant to resume making monthly payments to ex-wife and child—that "there can be no question that appellant's motion was properly denied by the trial court" because appellant "chose not to take an

9

appeal from that order within the period allowed" by appellate rules].) This David did not do.

David seeks to justify his failure to file a timely appeal and his tardiness in challenging Judge Apaloo's rulings by arguing in essence: (1) that, because he was proceeding in propria persona when the rulings were made, he misconstrued Judge Apaloo's remarks as an indication that he would not be permitted to file an appeal until the attorney's fees he owed to Georgina had been paid; and (2) that he was prejudiced by all the continuances.

> "[David] did not file an appeal from the 2017/2018 decision. However, this was due to the fact that the trial court told this *pro per* party he could not come back to [c]ourt until he paid the attorney's fees that had been ordered; attorney's fees he was incapable of paying . . . . The hearings were continually postponed and rescheduled to future dates, contingent upon his payment of the very amount for which he sought relief."

But these excuses do not wash.

As noted *ante*, David was *not* proceeding in propria persona at the October 2017 and January 2018 hearings in which Judge Apaloo issued the rulings David contends should be stricken; rather, he was represented by counsel at *both* of those hearings. Moreover, the continuances were *agreed* to by him, they *pre-dated* the 2017 and 2018 hearings, and the RFO to which they pertained was the 2013 RFO that he and his counsel concede he

10

*withdrew*—not the 2017 RFO that was before Judge Apaloo.[7]  In short, David's failure to file a timely appeal of the order on the 2017 RFO bars the relief he now seeks because the order is res judicata.  (*Matthew C., supra,* 6 Cal.4th at p. 393.)

**B.**     ***Code of Civil Procedure Section 473, Subdivision (d)***

Even if the 2022 motion were timely, we would conclude it was properly denied for the further reason that one of its essential premises—that Code of Civil Procedure section 473, subdivision (d), vested the court with authority to set Judge Apaloo's rulings aside as void—is faulty.

While it is true that subdivision (d), vests discretion in a trial court to set aside an order that is void, so too is it true that a trial court has *no* statutory power under that provision to set aside an order that is *not* void.[8] (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020; *Kremerman v. White* (2021) 71 Cal.App.5th 358, 369 (*Kremerman*).)  Although the decision of a trial court to set aside (or not set aside) a void order under

---

[7]     As noted *ante*, David appears to have suffered substantial setbacks to his health beginning in 2015.  He says these setbacks have "entangled [him] within an inextricable web of financial and medical adversity," "reducing him to a state of perpetual financial hardship and poverty" that renders him unable to pay the support and attorneys' fees he has been ordered to pay and that he likens to "debtor's prison."  However, he does not cite these setbacks as reasons for not having appealed Judge Apaloo's rulings on the 2017 RFO; and in the transcript of the remarks he made at the August 2017 hearing at which he represented himself, there is nothing to suggest he lacked agency or was impaired in his ability to communicate and press his case at that time.

[8]     Code of Civil Procedure section 473, subdivision (d), provides that: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order."

11

section 473, subdivision (d) is a matter we review for an abuse of discretion, the question of whether an order is void we review de novo. (*Kremerman*, at p. 369; *Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822 [reviewing court "need not reach the question of whether the trial court abused its discretion . . . [when item sought to be set aside] is not void"]; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495-496 (*Cruz*).)

"Once six months have elapsed since the entry of a judgment, 'a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face.' " (*Cruz, supra,* 146 Cal.App.4th at p. 496; accord *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441.) " ' "A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll;" ' " (*Cruz,* at p. 496; *Dill,* at p. 1441) and the universe of items that may be said to constitute the judgment roll in a case (like this) in which all parties have appeared is a very narrowly circumscribed class of documents, delineated in Code of Civil Procedure section 670 subdivision (b), that includes only "the pleadings, all orders striking out any pleading in whole or in part, a copy of the verdict of the jury, the statement of decision of the court, or finding of the referee, and a copy of any order made on demurrer, or relating to a change of parties, and a copy of the judgment." Notably, motions, briefs, transcripts, and orders of the kinds discussed *ante* are not included in the judgment roll. Here, David does not identify, nor has our own inspection of the record revealed, any items comprising the judgment roll in which the fault David finds in Judge Apaloo's rulings—specifically, her application of the disentitlement doctrine—can be discerned. Thus those rulings are not void.

Moreover, even if the judgment roll *did* reveal Judge Apaloo's application of the disentitlement doctrine, any resulting defect would at most

12

amount to an act in excess of the court's jurisdiction and thus render the rulings void*able*, not void.  Succinctly stated,

> "[E]rror in rendering a judgment or order generally falls into two categories:  'A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' "

(*Kremerman, supra,* 71 Cal.App.5th at p. 371; accord *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 599 (" '[a]ction "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" (i.e., jurisdiction over the subject matter and the parties) is not void, but only voidable' "].)  Here, there is no suggestion the trial court ever lacked jurisdiction over the subject matter or the parties.  Hence Judge Apaloo's rulings on the 2017 RFO would, at most, be void*able*—not void within the meaning of section 473, subdivision (d).[9]

---

[9]	Because we have concluded the judgment is not void, we do not address the Attorney General's alternative argument that "retroactive modifications of accrued child support arrearages are statutorily barred."

### III.
### Disposition

Affirmed.  Georgina is entitled to costs on appeal.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.